In the Matter of James B. CAREY, as President of International Union of Electrical, Radio and Machine Workers, AFL–CIO, Petitioner,

v.

GENERAL ELECTRIC COMPANY, Respondent.

United States District Court
S. D. New York.
April 19, 1962.

Lieberman, Katz & Aronson, New York City, Benjamin C. Sigal, Washing-

ton, D. C., Isadore Katz, New York City, of counsel, for petitioner.

Nordlinger, Riegelman, Benetar & Charney, New York City, David L. Benetar, New York City, of counsel, for respondent.

## PALMIERI, District Judge.

This is a motion by the President of the International Union of Electrical, Radio and Machine Workers, AFL-CIO (hereinafter Union), an unincorporated labor organization, to compel arbitration of twelve [1] grievances between members of various locals of the parent union and the General Electric Company (hereinafter Company). The action was originally commenced in the New York State Supreme Court by service of a verified petition and notice of motion. N.Y. Civil Practice Act §§ 1448–1469. It was removed to this court by respondent. 28 U.S.C. §§ 1441, 1446. The Company is engaged in an industry affecting commerce and federal jurisdiction is based on Section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185.

The agreement [2] between the Union and the Company provides for arbitration of any grievance involving the interpretation or application of a provision of the agreement which remains unsettled after having been fully processed pursuant to the grievance procedure.

The petition alleges that all the grievances involve interpretation or application of the agreement between the parent Union and the Company, and that some involve interpretation or application of local supplements to which the parent agreement is subject. Respondent objects to arbitration of these griev-

ances on a number of grounds disposition of which requires resolution of the following questions: whether the action is to be governed by New York or Federal law; whether arbitration of certain grievances is barred by failure to comply with procedural requirements of the grievance and arbitration provisions; whether certain of the grievances do involve interpretation or application of the agreement; whether certain of the grievances are excluded from arbitration by other provisions of the agreement; and whether disputes that involve matters actually or potentially within the scope of the jurisdiction of the National Labor Relations Board may be determined by arbitration. [3]

The labor philosophy that forms the framework for the resolution of some of these questions was given expression by the Supreme Court in Textile Workers Union v. Lincoln Mills of Alabama, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957), and in its more recent decision in the Steelworker cases. United Steelworkers v. American Manufacturing Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); United Steelworkers, etc. v. Warrior & Gulf Navigation Co., 363 U.S. 574, 575, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); United Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).

Although section 301 of the Taft-Hartley Act does not set forth the law to be applied in actions for violation of collective bargaining agreements, the Supreme Court in Lincoln Mills held that suits under section 301 are to be governed by federal law and that that law

---

1. The petition contains fourteen grievances, but two of the grievances, National Docket No. 4142, Local 201, West Lynn, Massachusetts, and National Docket No. 3996, Local 747, Jonesboro, Arkansas, were removed from this proceeding.

2. Certain of the grievances arose under the 1955 agreement and others arose under the 1960 agreement but the grievance and arbitration provisions, insofar as relevant, are identical in both agreements.

3. Respondent also denies certain allegations, thus raising defenses going to the merits of the disputes. It is well established legal doctrine that the merits of a claim may not be considered by the court where the parties have agreed to submit the dispute to arbitration. See the Steelworker cases, discussed below, and Hays, infra, at pp. 920–921.

is to be fashioned by the federal courts from the national labor policy.[4] The federal law to be applied in suits to compel arbitration was formulated by the Supreme Court in broad and emphatic terms in its landmark decisions in the Steelworker cases.[5] The result of these cases, as stated by one labor law authority, now a judge of this Circuit, was to "uphold the arbitrator in the exercise of the broadest jurisdiction in the absence of special contractual limitations on that jurisdiction." Hays, The Supreme Court and Labor Law October Term, 1959, 60 Colum.L.Rev. 901, 920 (1960).

In these cases the Court developed at some length its views that collective bargaining agreements are different from contracts generally, that arbitration of labor disputes serves a different function from arbitration of commercial disputes, and that in view of these considerations the judicial attitude in interpreting arbitration provisions in collective bargaining agreements should be one favoring arbitration where the contract permits of such an interpretation. Thus, the Court stated:

"A collective bargaining agreement is an effort to create a system of industrial self-government. * * * [T]he grievance machinery under a collective bargaining agreement is at the very heart of the system of industrial self-government. Arbitration is the means of solving the unforeseeable by molding a system of private law for all the problems which may arise and to provide for their solution in a way which will generally accord with the variant needs and desires of the parties. The processing of disputes through the grievance machinery is actually a vehicle by which meaning and content are given to the collective bargaining agreement."

In Warrior, supra, the Court quoted from Cox, Reflections Upon Labor Arbitration, 72 Harv.L.Rev. 1482, 1498–1499 (1959), as follows:

"* * * [I]t is not unqualifiedly true that a collective-bargaining agreement is simply a document by which the union and employees have imposed upon management limited, express restrictions of its otherwise absolute right to manage the enterprise, so that an employee's claim must fail unless he can point to a specific contract provision upon which the claim is founded. There are too many people, too many problems, too many unforeseeable contingencies to make the words of the contract the exclusive source of rights and duties. One cannot reduce all the rules governing a community like an industrial plant to

4. In holding that section 301 provides for the application of federal substantive law, the Court avoided the question whether Congress can confer jurisdiction on Article III Courts over actions that are not based on federal law and not subject to federal jurisdiction on diversity grounds. See Hart and Wechsler, The Federal Courts and the Federal System, pp. 744–747. Justice Burton wrote a concurring opinion, in which Justice Harlan joined, specifically stating that they did "not subscribe to the conclusion of the Court that the substantive law to be applied in a suit under § 301 is federal law." They held, however, that since some federal rights may be involved in suits under section 301, "the constitutionality of § 301 can be upheld as a congressional grant to Federal District Courts of what has been

called 'protective jurisdiction.'" 353 U. S. 460, 77 S.Ct. 920. Justice Frankfurter dissented. Since he did not construe § 301 as providing for the application of federal substantive law, pp. 462–469, 77 S.Ct. 923–927, and did not subscribe to the theory of protective jurisdiction, pp. 473–475, 77 S.Ct. 929–930, or any other theory that would justify District Court jurisdiction in the absence of governing federal law, he concluded that this section was unconstitutional.

5. United Steelworkers v. Enterprise Wheel & Car Corp., supra, was an action to enforce an arbitration award, not an action to compel arbitration. In this case, too, however, the decision and language of the Court indicate a labor philosophy strongly favoring the resolution of labor disputes by arbitration.

fifteen or even fifty pages. Within the sphere of collective bargaining, the institutional characteristics and the governmental nature of the collective-bargaining process demand a common law of the shop which implements and furnishes the context of the agreement. We must assume that intelligent negotiators acknowledged so plain a need unless they stated a contrary rule in plain words." 363 U.S. at 579–580, 80 S. Ct. at 1351.

## The Applicable Law

Respondent contends, however, that the philosophy reflected in the Steelworker cases and the rules developed by the federal courts in construing arbitration agreements do not apply in the instant case because the collective bargaining agreement between it and petitioner specifically provides that it is to be governed by New York law. The recent decision of the Supreme Court in Local 174, Teamsters, etc. v. Lucas Flour Co., 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962), makes it unnecessary to consider this contention at any length. In the Lucas case the Court held that state courts adjudicating disputes within the purview of section 301 must apply federal law. The Court said:

> "The dimensions of § 301 require the conclusion that substantive principles of federal labor law must be paramount in the area covered by the statute. Comprehensiveness is inherent in the process by which the law is to be formulated under the mandate of Lincoln Mills, requiring issues raised in suits of a kind covered by § 301 to be decided according to the precepts of federal labor policy." 369 U.S. 103, 82 S.Ct. 576.

Thus New York courts are now bound by federal law in actions within the purview of section 301. Had the instant case continued in the New York courts, "incompatible doctrines of local law [would have had to] give way to principles of federal labor law." Id. at p. 102, 82 S.Ct. at p. 576. Clearly, it must also be governed by federal law here.[6]

## Procedural Arbitrability

The Collective Bargaining Agreement between the Union and the Company provides for a three step grievance procedure culminating in arbitration of any unsettled grievance which involves "the interpretation or application of a provision" of the agreement. The procedure, in pertinent part, is as follows:[7]

### "ARTICLE XIII

#### "Grievance Procedure

\*    \*    \*    \*    \*    \*

"Grievances other than those of a general nature may be processed only by recourse to the following successive steps:

"(a) Step One

"(1) Within a reasonable time after the occurrence or knowledge of the situation, condition or action of Management giving rise to the grievance, the employee affected thereby or his Steward may present the grievance to the employee's Foreman or other immediate supervisor.

\*    \*    \*    \*    \*    \*

"(c) Step Three

"Any grievance, having been processed through Step Two without satisfactory settlement, may be referred to the National Officers of the Union for submission to an Executive Officer of the Company or his designated repre-

---

6. While this renders the clause providing for application of New York law meaningless, the only way to preserve that clause would be to interpret it as incorporating into the contract the New York law as it existed at the date the contract was entered into. But such a construc-

tion would be contrary both to sound principles of contract construction and to the national labor policy.

7. The language quoted is identical in the 1955 and 1960 agreements.

sentative, who shall arrange meetings for the purpose of discussing such grievances.

"Such grievances shall be submitted to the Company not less than two weeks prior to the date of any discussion and not more than three months after the completion of discussions and the final decision of local Management at Step Two.

## "ARTICLE XV

### "*Arbitration*

"1. Any grievance [subject to arbitration] shall be submitted to arbitration upon written request of either the Union or the Company, provided such request is made within 30 days after the final decision of the Company has been given to the Union pursuant to Article XIII, Section 2(c). * * *

"2. (a) Within 10 days following a written request for arbitration of a grievance, the Company or the Union may request the American Arbitration Association to submit a Panel of names from which an arbitrator may be chosen. In the selection of an arbitrator and the conduct of any arbitration, the Voluntary Labor Arbitration Rules of the American Arbitration Association shall control [with exceptions not mentioned here].

"(b) It is further expressly understood and agreed that the American Arbitration Association shall have no authority to process a request for arbitration or appoint an arbitrator if either party shall advise the Association that * * * the grievance desired to be arbitrated does not, in its opinion, raise an arbitrable issue. In such event, the Association shall have authority to process the request for arbitration and appoint an arbitrator in accordance with its rules only after a final judgment of a Court has determined that the grievance upon which arbitration has been requested raises arbitrable issues and has directed arbitration of such issues."

The Company objects to arbitration of two of the grievances [8] on the ground that they were not presented within a reasonable time as required by Article XIII (a) (1); to two of the grievances [9] on the ground that they were not referred to Step Three within three months, as required by Article XIII(c); and to seven [10] of the grievances on the ground that the Union failed to request a Panel within 10 days as required by Article XV(2) (a).

8. National Docket No. 4910 and No. 4928 (Local No. 320, Syracuse, N.Y.).

9. National Docket No. 3970 and No. 3971 (Local No. 255, Pittsfield, Mass.).

10. Failure to request the American Arbitration Association to submit a Panel within 10 days was raised as a defense to National Docket Nos. 4910, 4928, 4665, 5039, 4922, 4454, 4606–4611. The following chart indicates the date on which the grievance procedure was completed, the date on which the Union submitted a request for arbitration to the American Arbitration Association, the date on which the Union requested a Panel, the date on which the Company notified the Association that it did not consider the grievance arbitrable, and the date on which the Association notified the Union and the Company that it had stopped processing the grievance.

| Grievance | Date Grievance Procedure Completed | Date Union Submitted Request for Arbitration | Date Union Requested American Arbitration Association to Submit a Panel | Date Company Notified American Arbitration Association That It Did Not Consider the Grievance Arbitrable | Date American Arbitration Association Notified Union That It Had Stopped Processing the Grievance |
|---|---|---|---|---|---|
| National Docket No. 4910 Local #320 Syracuse, NY | June 6, 1960 | June 9, 1960 | December 16, 1960 | December 21, 1960 | January 10, 1961 |
| 4928 Local #320 Syracuse, NY | June 6, 1960 | June 9, 1960 | July 12, 1960 | July 18, 1960 | July 20, 1960 |
| 4665 Local #320 Syracuse, NY | February 29, 1960 | March 9, 1960 | May 9, 1960 | June 14, 1960 | August 16, 1960 |
| 5039 Local #119 Philadelphia, Pa | June 30, 1960 | July 5, 1960 | July 28, 1960 | August 12, 1960 | August 16, 1960 |
| 4922 Local #320 Syracuse, NY | June 6, 1960 | June 22, 1960 | July 12, 1960 | July 15, 1960 | July 19, 1960 |
| 4454 Local #201 West Lynn, Mass | November 25, 1959 | December 11, 1959 | January 6, 1960 | January 18, 1960 | January 20, 1960 |
| 4606–4611 | February 25, 1960 | March 9, 1960 | June 15, 1960 | June 27, 1960 | June 29, 1960 |

These dates are taken from the petition and answer.

■ The initial question posed is whether objections to arbitration on the ground that the party seeking to compel it has failed to comply with the procedural requirements of the grievance and arbitration provisions is to be decided by the court or by the arbitrator. Thus far the Supreme Court has not ruled on this question. The Circuit Courts are not in agreement: The First and Seventh Circuits have held that the question was for the Court. Boston Mutual Life Ins. Co. v. Insurance Agents' Int'l Union, 258 F. 2d 516 (1st Cir., 1958); Brass & Copper Workers Federal Labor Union, etc. v. American Brass Co., 272 F.2d 849 (7th Cir., 1959), cert. denied, 363 U.S. 845, 80 S.Ct. 1609, 4 L.Ed.2d 1728 (1960), the Seventh Circuit relying on the previous decision of the First Circuit in Boston Mutual. The Third Circuit has held it was for the arbitrator. Radio Corp. of America v. Association of Professional Engineering Personnel, 291 F.2d 105 (3rd Cir., 1961), cert. denied, 368 U.S. 898, 82 S.Ct. 174, 7 L.Ed.2d 93; Association of Westinghouse Salaried Employees v. Westinghouse Electric Corp., 283 F.2d 93 (3rd Cir., 1960). The Fifth Circuit has ruled on questions of procedural non-compliance, International Ass'n of Machinists v. Hayes Corp., 296 F.2d 238 (5th Cir., 1961); Southwestern Elec. Power Co. v. Local No. 738, International Bhd. Elec. Workers, 293 F.2d 929 (5th Cir., 1961), without discussing, however, whether such questions should be determined by the court or arbitrator. Both Boston Mutual and Brass Workers were decided before the Supreme Court decision in the Steelworker cases, and, of the Circuit Court cases in which the objection was ruled upon by the Court, the Brass Workers case, supra, was the only one in which the Court denied arbitration on the ground that the Union failed to comply with a procedural condition of the arbitration provision. The District Courts, too, have in some instances decided questions of procedural compliance, and in others held the question to be for the arbitrator. Compare United Brick & Clay Workers, etc. v. Gladding, Mc-Bean & Co., 192 F.Supp. 64 (S.D.Cal. 1961) and General Tire & Rubber Co. v. Local No. 512, United Rubber, etc., Workers, 191 F.Supp. 911 (D.R.I.1961) with Maryland Tel. Union v. Chesapeake & Potomac Tel. Co., 187 F.Supp. 101, 109 (D.Md.1960) and Philadelphia Dress Joint Board, etc. v. Sidele Fashions, 187 F.Supp. 97 (E.D.Pa.1960).

While a literal interpretation of an arbitration clause providing for arbitration of any dispute involving the interpretation or application of the contract might require submission of the question of arbitrability to the arbitrator, the Supreme Court has not placed such a construction on this provision when dealing with questions of substantive arbitrability. It said: "The Congress * * * has by § 301 of the Labor Management Relations Act, assigned the courts the duty of determining whether the reluctant party has breached his promise to arbitrate. For arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." [11] Moreover, that the parties in this instance did not contemplate submission of the question of arbitrability to the arbitrator is evident from their contract; Article XV(2) (b) provides that if either party notifies the American Arbitration Association that in its opinion the issue is not arbitrable, the dispute shall not proceed to arbitration until a court has ruled on the question.

Although the Supreme Court has not ruled on procedural arbitrability, the rationale underlying its decision that the question of substantive arbitrability is for the court—namely, that a party can only be required to submit a dispute to arbitration if it has agreed to do so— would appear to apply equally whether the reluctant party contends that it has

11. Warrior, supra, 363 U.S. at p. 582, 80 S.Ct. at p. 1353. See also, Warrior, n. 7, p. 583, 80 S.Ct. p. 1353; concurring opinion of Justice Brennan in American Mfg. Co., supra, 363 U.S. at 570–571, 80 S.Ct. at 1364; Cox, supra, 1508–1509.

not agreed to arbitrate a certain type of dispute or whether it contends that it has not agreed to do so unless certain procedural conditions are complied with. However, the conclusion that questions of procedural arbitrability must be decided by the court would, in certain situations, be contrary to the arbitration philosophy that permeates the Court's arbitration decisions, to wit, that judges should defer to arbitrators on matters over which the latter possess special competence.[12] Thus, judicial determination of such questions in situations where the procedure is stated in general rather than specific terms and its application to a particular grievance requires consideration of factors which an arbitrator cognizant of the industrial context within which the agreement operates is particularly qualified to consider, or in situations where the alleged justification for noncompliance requires such consideration, would ill accord with a philosophy of judicial deference to arbitration.

Cox, while also of the view that the question of arbitrability is for the court, states: "This does not mean that the Court must decide every question antecedent to a determination of the merits of a grievance which might be thought to involve the arbitrability." And again, " * * * I suggest that the conventional arbitration clause limiting the arbitrator to disputes concerning 'interpretation and application' of the contract reserved the right to a judicial determination upon whether the arbitrator has jurisdiction over the subject matter but that all other questions—procedural, jurisdictional, or substantive—are solely within the power of the arbitrator to determine." Cox, supra, p. 1511.

Perhaps the contrary results that flow from a consideration of the contractual nature of arbitration provisions and from a consideration of the unique role attributed to the arbitrator by the Supreme Court can be reconciled by an approach under which questions of procedural arbitrability that require resolution of problems similar to those usually handled by an arbitrator, that is, questions that require "the arbitrator to exercise the creative role his function demands," would be submitted to arbitration, reserving to the court questions that do not call for this special competence, as, for example, where the contract provides in specific rather than general terms the procedural requirements and the consequences of noncompliance.[13] Compare, Procedural Requirements of a Grievance Arbitration Clause: Another Question of Arbitrability, 70 Yale L.J. 611 (1961). While this approach will entail greater difficulty than a hard and fast rule either reserving all questions of procedural arbitrability to the courts or submitting all such questions to the arbitrator, I think it is more consonant with the views expressed by the Supreme Court in the Steelworker cases than either of the alternatives. This approach may also explain the different results reached by the various Circuits: With the exception of Boston Mutual,[14] which was decided before the Steelworker cases, the Circuits

12. The validity of the assumption that arbitrators possess a competence which judges lack is questioned by Hays, supra at pp. 930–935.

13. United Brick & Clay Workers v. Gladding, McBean & Co., supra, illustrates a situation in which I think the question of procedural arbitrability was clearly for the court, as Judge Yankwich held. In that case the contract specifically provided that failure of the Union to process a grievance within the time limits specified in the various steps "shall render the grievance void" in the absence of a written extension of time. The Court also pointed out that the provision was put into the contract to tighten up a previously loose procedure, that the Union failed in its endeavor to prove a contrary practice constituting a waiver of this requirement, and that the Company had warned the Union in that grievance that if it wanted to appeal to Step Three it would have to do so within the time specified.

14. Boston Mutual may also be read as leaving open the possibility that under some circumstances the question might be for the arbitrator. The Court stated: "Where we part company with the district court is in its holding that the determination whether a reasonable

that decided questions of procedural arbitrability were all dealing with specific procedural provisions.

■ Applying the principle above stated to the procedural questions before me, I conclude that: The question whether grievances No. 4910 and No. 4928 were brought within a reasonable time and the question whether the Union's defense justifies its failure to take grievances No. 3970 and No. 3971 to Step 3 within three months, as required, should be decided by the arbitrator. The question whether the Union's failure to request a panel within ten days bars arbitration should be decided by the court.

The two grievances objected to on the ground that they were not presented within a "reasonable time after occurrence or knowledge of the situation" were presented approximately four and two years, respectively, after the events complained of are alleged to have occurred. National Docket No. 4910 involved failure to recall a senior employee to his job as Painter Leader while placing a junior employee on it. The petition alleges that the grievant had been laid off, that during this period he was transferred to another job, that in December of 1955 a junior employee was placed on his job and remained on it for two years, that the senior employee was unaware of it because the job to which he had been transferred was in a different building ten miles distant from the building in which he had worked as a Painter Leader, and that he did not learn of it till 1959, when the grievance was filed. National Docket No. 4928 involves the downgrading of a senior employee to a lower classification than that to which a junior employee had been downgraded during a slack period. Again, the Union claims that the senior employee was unaware of the situation at the time and that the grievance was filed as soon as he learned of it. By providing for the presentation of grievances within "a reasonable time" the parties purposely formulated a flexible rule that would permit consideration of facts such as those alleged by the Union in justification of the delay. I think that an arbitrator, familiar with the industrial context within which these grievances occurred, is particularly qualified to determine when the aggrieved employee acquired knowledge of the situation and if he delayed thereafter, whether the delay was reasonable.

While the procedural requirement violated by the Union in National Docket Nos. 3970 and 3971 is specific, the defense urged in justification of non-compliance requires consideration of factors more appropriate for the arbitrator. These grievances involved a complaint by two employees laid off because they lost their privileged position when the Company refused to recognize their status as stewards after it placed two groups of employees under a single foreman. The question presented was whether a union is required to eliminate a steward when the company combines groups of employees and eliminates a foreman. The Union's justification for noncompliance is that it held the grievance in abeyance pending the determination of the identical issue in another arbitration proceeding. Questions such as what effect a determination between other parties would have had on the grievance negotiations between the Union and Company here, whether it is usual for parties to consider arbitration decisions in their efforts to resolve grievances, and whether the Union should have notified the Company of its intention to hold the matter in abeyance, all relevant to a decision on whether the non-compliance was justified, are,

---

time had elapsed in the present case "should be left for initial consideration by the arbitrator, and should not be foreclosed by a court decision preceding the arbitrator's opportunity to rule." The district court apparently would reach this conclusion not only where reasonable men might differ as to whether the Union had proceeded with sufficient diligence to press for arbitration by the American Arbitration Association, but also where no reasonable man could conclude that the Union had acted with due diligence." (258 F.2d p. 521.)

considered in light of the recent Supreme Court decisions, questions on which the court should defer to an arbitrator.

■ In contradistinction to the above procedural questions, the provision for the request of a Panel is specific and does not require consideration of factors peculiar to industrial relations. The Union does not deny its failure to request a Panel within ten days, but contends that the provision is permissive rather than mandatory, emphasizing the word "may"; that the provision has been ignored for many years; and that the rules of the American Arbitration Association render such a request unnecessary. The Union does not suggest why a permissive provision was thought necessary nor what meaning could be attributed to the ten day limitation under such a construction. I shall not consider whether the provision was nullified by a contrary practice—a question which, were it necessary to the decision, would have been more appropriate for consideration by the arbitrator—because I think the Union's last point disposes of this objection. The courts have repeatedly held that literal compliance is not required where it would have served no purpose. International Ass'n of Machinists v. Hayes Corp., supra; Southwestern Electric Power Co. v. Local No. 738, International Bhd. of Elec. Workers, supra; General Tire & Rubber Co. v. Local No. 512, United Rubber, etc., Workers, supra; International Union of Operating Engineers, etc. v. Monsanto Chemical Co., 164 F.Supp. 406 (W.D.Ark.1958). But see United Brick & Clay Workers, etc. v. Gladding, McBean & Co., supra;[15] Local 201, International Union of Elec. Radio

& Mach. Workers v. General Electric Co., 171 F.Supp. 886 (D.Mass.1959). In International Ass'n of Machinists v. Hayes Corp., supra, the contract provided that the decision at Step 3 of the grievance procedure was final unless arbitration was invoked by written notice within 20 days. The employer was doing work for the Government and the dispute involved the discharge of an employee at the Government's direction. Written notice was not given until nine months after the employer had rejected the grievance on the ground that it was not subject to the grievance procedure. The Court ordered arbitration, stating:

"Since it is plain from this record that a formal written demand for post-Step 3 arbitration would have received the same treatment as the original demands, the employer ought not to be able to insist on useless, formal, literal compliance, as a condition to the judicial determination of the [question of substantive arbitrability]." (296 F.2d p. 243.)

■ In response to my inquiry, counsel for the American Arbitration Association informed me that where the contract provides for arbitration to be administered by the American Arbitration Association, "a request to initiate the proceedings by one party to that contract is sufficient to set in motion the complete procedures for holding hearings. This includes sending names of persons chosen from our panels, from which the parties may make a mutual selection." From this letter, and the Labor Arbitration Rules of the American Arbitration Association,[16] it is evident that a

---

15. See note 13, supra.

16. Rule IV, subdivision 12, provides:

"*Appointment from Panels*—If the parties have not appointed an Arbitrator and have not provided any other method of appointment, the Arbitrator shall be appointed in the following manner: Immediately after the filing of [demand for arbitration], as required under Rule III, the Tribunal Clerk shall submit simultaneously to each party to the dispute, an identical

list of names of persons chosen from the Panels. Each party to the dispute shall have seven days from the date of mailing of such lists in which to examine said list, cross off any names to which he objects and number the remaining names indicating the order of his preference, and return the lists to the Tribunal Clerk. When any party or both parties fail to return the list within the time specified, all persons named therein shall be deemed accepta-

request for a Panel was entirely unnecessary and, had the Company not objected to arbitration of these disputes, a Panel would have been submitted to the parties by the Association as part of its regular procedure in processing a request for arbitration. To permit non-compliance to bar arbitration under these circumstances would be contrary to everything the Supreme Court has said about labor arbitration.[17]

### Substantive Arbitrability

Article XV of the Collective Bargaining Agreement between the company and the Union provides:

"1. Any grievance which remains unsettled after having been fully processed pursuant to the provisions of Article XIII, and which involves either.

"(a) the interpretation or application of a provision of this

Agreement, or (b) a disciplinary penalty (including discharge) imposed on or after the effective date of this Agreement, which is alleged to have been imposed without just cause,

shall be submitted to arbitration upon written request of either the Union or the Company * * *.

* * * * * *

"3. (b) It is specifically agreed that no arbitrator shall have the authority to establish or modify any wage, salary or piece rate, or job classification or authority to decide the appropriate classification of any employee. Subject to the foregoing limitations on the authority of an arbitrator, nothing in this subsection (b) shall prevent arbitration of a grievance involving a violation of this Agreement."

---

ble. From among the persons who have been approved on both lists, and in accordance with the designated order of mutual preference if any, the Tribunal Clerk shall invite the acceptance of an Arbitrator to serve. If the parties fail to agree upon any of the persons named or if those named decline or are unable to act, or if for any other reason the appointment cannot be made from the submitted lists, the Administrator shall have power to make the appointment from other members of the Panels without the submission of any additional lists."

17. The Company places heavy reliance on the decision in Local Union No. 783, Allied Industrial Workers of America v. General Electric Co., 213 F.Supp. 273 (W.D.Ky.1959), in which the Court construed the identical provision and held that the "arbitration provisions of the collective bargaining agreement are unenforceable for failure to comply with an essential procedural requirement." Its reason for so holding was that "unless the 10 days limitation is held to be a binding prerequisite of the arbitration process, the parties might never know whether a claim has been definitely abandoned or whether it would be called up at some future date. This is exemplified in the present case where one of the grievances involved dates to January

uary 29, 1953, which is more than five years prior to the filing of this suit." I respectfully suggest that the Court erred in its understanding of the agreement. The 10 day limitation is for a request for a Panel after a request for arbitration has been made and not for the institution of an action to compel arbitration. Thus, had the Union requested a Panel within 10 days and had the Employer notified the American Arbitration Association that it considered the dispute non-arbitrable, this requirement would have been complied with but the employer would have been no better informed on whether the claim had been abandoned or whether the Union intended to institute a court action to compel arbitration. In the case at bar the Company notified the American Arbitration Association that it did not consider the dispute arbitrable even though more than 10 days had elapsed without a request for a Panel by the Union. See Chart in note 10, supra. Once it had so notified the Association it knew that under the agreement arbitration could not proceed without a court order and the Association so notified it. The Collective Bargaining Agreement does not specify the time within which an action to compel arbitration must be brought, nor does the Company object to arbitration on the ground that the action to compel it is belated.

The Company earnestly argues that section 3(b) excludes from arbitration a number [18] of the grievances, because their resolution would require the arbitrator to establish or modify the wage, piece rate, or job classification established by the Company. It also objects to arbitration of one of these grievances on the ground that it does not involve interpretation or application of a provision of the agreement [19] and to another on the ground that it is excluded from arbitration by virtue of a clause which vests authority over the question in management.[20] Before detailing the facts of these grievances it may be appropriate to review the Supreme Court's decisions in the American Mfg. and Warrior cases, supra.

In the American Mfg. case, the Union brought suit to compel arbitration of a grievance that challenged the Company's refusal to reinstate an employee who had suffered an injury which, in the opinion of his doctor, resulted in a 25% permanent partial disability and for which he had settled a compensation claim against the employer on that basis. In reversing the District Court and Circuit Court refusal to compel arbitration, the Supreme Court stated:

"The function of the court is very limited when the parties have agreed to submit all questions of contract interpretation to the arbitrator. It is confined to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract." (363 U.S. pp. 567–568, 80 S.Ct. p. 1346.)

And, apparently, a claim may be governed by the contract even if not governed by specific language in the contract for the opinion goes on to state: "The courts * * * have no business * * * determining whether there is particular language in the written instrument which will support the claim." [21]

In concluding, the Court said:

"The union claimed in this case that the company had violated a specific provision of the contract. The company took the position that it had not violated that clause. There was, therefore, a dispute between the parties as to "the meaning, interpretation and application" of the collective bargaining agreement. Arbitration should have been ordered. When the judiciary undertakes to determine the merits of a grievance under the guise of interpreting the grievance procedure of collective bargaining agreements, it usurps a function which under that regime is entrusted to the arbitration tribunal." (363 U.S. 569, 80 S.Ct. 1347).

In United Steelworkers, etc. v. Warrior & Gulf Navigation Co., supra, the Union sought to compel arbitration of a grievance challenging the Company's right to contract out work formerly done by members of the bargaining unit. Despite the absence of any language in the contract relating to contracting out and despite a history of negotiations in which the Union unsuccessfully sought to obtain a provision prohibiting contracting out, the Court held the grievance arbitrable. The Court stated:

"[T]o be consistent with congressional policy in favor of settlement of disputes by the parties through the machinery of arbitration, the judicial inquiry under § 301 must be strictly confined to the question whether the reluctant party did agree to arbitrate the grievance or

---

18. National Docket No. 4485, Local No. 201, West Lynn, Mass., National Docket No. 4665, Local No. 320, Syracuse, N.Y., National Docket No. 3830, Local No. 248, Burlington, Vt., National Docket No. 5039, Local No. 119, Philadelphia, Pa., National Docket No. 4922, Local No. 320, Syracuse, N.Y., and National Docket No. 4557, Loal No. 201, West Lynn, Mass.

19. National Docket No. 3830, Local No. 248, Burlington, Vt.

20. National Docket No. 4485, Local No. 201, West Lynn, Mass.

21. Compare Cox pp. 1490–1500, 1512–1513. But see Hays, p. 922, who shows the problems to which the logical conclusion of such a position may lead.

did agree to give the arbitrator the power to make the award he made. An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.

\*   \*   \*   \*   \*   \*

" \* \* \* the Court should view with suspicion any attempt to persuade it to become entangled in the construction of the substantive provisions of a labor agreement even through the back door of interpreting the arbitration clause, when the alternative is to utilize the services of an arbitrator." (363 U.S. pp. 582–585, 80 S.Ct. 1353–1354.)

In a recent decision of this Circuit, the Court said:

"The nub of the matter is that under the broad and comprehensive standard labor arbitration clause every grievance is arbitrable, unless the provisions of the collective bargaining agreement concerning grievances and arbitration contain some clear and unambiguous clause of exclusion, or there is some other term of the agreement that indicates beyond peradventure of doubt that a grievance concerning a particular matter is not intended to be covered by the grievance and arbitration procedure set forth in the agreement." The Procter & Gamble Independent Union v. Procter & Gamble Mfg. Co., 298 F.2d 644, 645 (2d Cir., 1962).

*The Facts of the Grievances Involved.* National Docket No. 4485 involves a refusal by the Company to reinstate an employee as a sheet metal worker, despite his seniority rights, on the ground that he was physically unable to perform the work. The petition alleges that the employee had worked as a sheet metal worker for about eight months; that he was laid off because of a lack of work; and

that when other employees with less seniority were recalled, he was told that he could not be placed in his former job because of his physical condition. The Company contends that arbitration of this grievance would require the arbitrator to "determine proper classification" and that a provision of the local supplement vests exclusive authority to determine physical disability in the Company.

National Docket No. 4665 protests the Company's failure to pay certain employees the wage to which their classification entitled them under the agreement and its failure to advance the wages of these employees pursuant to the progression schedules of the agreement. The petition alleges that the Company hired employees as No. 1762 Testmen, which carried an R-19 classification, and paid them R-16 rates, the rate applicable to 1763 Testmen, that it thereafter failed to advance their wages, and that the Company continues to engage in this practice. The Company contends that arbitration of this grievance would be contrary to the provision that no arbitrator shall have authority to establish or modify job classifications, or wages, or to determine the appropriate classification of an employee.

National Docket No. 3830 protests the Company's action in reducing the pay rate of two employees. The petition alleges that these employees had been classified as R-17 Millwrights for approximately 9 years; that during a heavy layoff they worked in a lower classification; and that thereafter they were returned to perform the duties they had performed as Millwrights but were classified as Machine Repairmen R-12, and paid at a lower rate. The Company takes the position that this grievance does not involve interpretation or application of the contract and that it would require the arbitrator to determine proper wages and job classifications.

National Docket No. 5039 involves an allegation of improper retroactive deductions from the earnings of sixteen employees. These employees worked on ex-

perimental jobs to which they were transferred under agreed terms of compensation. Two of the employees on the experimental job had complained that their earnings on the experimental job were less than their average earnings on their regular jobs. After considering their grievance the Company paid them the difference between what they had actually earned and their average earnings on their regular job. Thereafter the Company recomputed the wages of 23 other employees on the experimental job and deducted the excess from later checks of those 16 who had earned more on the experimental job than their average earnings on their regular jobs. The grievance complains of these deductions. The Company contends that arbitration of this greivance would violate the provision that an arbitrator has no authority to modify wages.

National Docket No. 4922 protests the removal of employees from the production and maintenance unit and the conversion of their jobs from hourly pay to salary without any change in their duties. The petition alleges that employees classified as No. 8323 Crystal Processors, R-10, have historically been in the production and maintenance Unit, that the Company removed these employees from the Unit in violation of Article I(1), providing for Union recognition, and that it thereafter laid off some of the employees in violation of their contract rights. The Company position is that the subject matter of this grievance is within the exclusive jurisdiction of the NLRB,[22] and that the grievance is barred from arbitration because it would require the arbitrator to decide the appropriate classification of employees.

National Docket No. 4557 protests the promotion of one employee to an R-14 opening despite the claim to the job by another employee who, the Union contends, had greater seniority rights. The Company claims that arbitration of this grievance would require the arbitrator to determine the proper classification of an employee, that the subject matter of the grievance is within the exclusive jurisdiction of the NLRB,[23] and that the claim is based on an illegal contract provision.[24]

**■** *Article XV(3) (b)*. To construe section (3) (b) as the Company urges would be to permit the exception to swallow the whole. The contract between the Company and the Union contains detailed provisions relating to working conditions, service credits, ingrade progression, reduction and increase of forces, and detailed tables on the compensation of salaried and hourly rated employees. The grievances allege violation of these provisions. National Docket No. 4485 alleges violation of seniority rights in lay-off and rehire; National Dockets Nos. 4665, 3830 and 5039 allege violation of provisions relating to compensation; National Docket No. 4922 alleges violation of compensation and lay-off provisions and of the Union recognition clause; National Docket No. 4557 alleges violation of seniority rights in promotion. These grievances involve the application of provisions which are the foundation of any labor agreement. An interpretation of Article XV(3) (b) which would exclude them from arbitration would leave the Union dependent on the Company's good faith for the rights that are at the heart of the agreement, with resort to a strike as the only means of enforcement in case of a breach. It is hardly conceivable that the parties contemplated such a result.

The Union also urges that Article XV (3) (b) constitutes a limitation on the authority of the arbitrator, not a bar to arbitration. This position finds support in the fact that in what appears to be a very carefully drawn contract, other provisions, not relevant here, state specifically that certain matters are excluded from arbitration.

The function of the arbitrator in resolving these grievances will not be to

22. This objection is discussed, infra, under NLRB jurisdiction.

23. Id.

24. Id.

establish or modify any wage, salary, piece rate, or job classification, but to determine whether the wage, rate, or job classification prescribed by the contract was applied in the particular cases before him. See Radio Corporation of America v. Association of Professional Engineering Personnel, supra.

While such a construction may leave little of the exception, it is preferable to a construction that would permit the exception to vitiate the contract. Cf. Lummus Co. v. Commonwealth Oil Refining Co., 297 F.2d 80, 81, 93 (2d Cir., 1961). Whatever disposition might have been made of the Company's objection prior to the Steelworker decisions, it is clear that it must be rejected when considered in the light of these decisions and the recent decision of this Circuit in the Procter & Gamble case, supra.

*Other objections.* The other reasons urged by the Company in support of its contention that the arbitration provision does not apply to two of these grievances —in the case of National Docket No. 3830 that it does not involve the interpretation or application of a provision of the agreement, and in the case of National Docket No. 4485 that the contract vested the Company with authority to determine physical ability—must likewise be rejected.

In National Docket No. 3830 the Union does allege that the Company violated a provision of the agreement. It alleges violation of Article VI(5) (a) (4), providing step rates and progression schedules. In American Mfg. the Supreme Court said that if the "Union claimed * * * that the company had violated a specific provision of the contract" and the "company took the position that it had not," there was a dispute between the parties as to the " 'interpretation and application' of the collective bargaining agreement." [25]  Moreover, the Supreme

Court admonished the courts not to concern themselves with "whether there is particular language in the instrument which will support the claim." [26] Professor Cox points out that a number of characteristics distinguish collective bargaining agreements from other contracts, necessitating broad and flexible provisions and the omission of much detail in the former. Therefore, "the 'interpretation and application' of a collective bargaining [agreement cannot be] limited to documentary construction of language." [27] Indeed, it is difficult to conceive of anything more clearly within the scope of a collective bargaining agreement than the rates payable to employees.

The Company's contention that the grievance alleged in National Docket No. 4485 is non-arbitrable because its determination of physical disability is final, is based on the following provisions of the Local Supplement:

> "An employee with a physical limitation as determined by the Company Dispensary will be transferred to a suitable available classification under the steps of this procedure."

This clause is contained not in an arbitration provision but in one concerned with the transfer of employees under various circumstances. In order to hold, as the Company urges, that this provision bars arbitration, I would have to construe it as making the Company Dispensary determination final and absolute, and not subject to challenge under any circumstances. This would involve the court "in the construction of the substantive provisions of [the] agreement * * * through the back door of interpreting the arbitration clause." Since there is here neither an "express provision excluding [the] particular grievance from arbitration," nor "the most forceful evidence of a purpose to exclude the claim from arbitration," [28] the grievance must be held ar-

---

25. 363 U.S. p. 569, 80 S.Ct. p. 1347. See also Warrior, supra, 363 U.S. at p. 585, 80 S.Ct. at p. 1354.

26. American Mfg., 363 U.S. at p. 568, 80 S.Ct. at p. 1346.

27. Cox, supra, pp. 1490–1500, 1512–1513.

28. Warrior, supra, 363 U.S. p. 585, 80 S. Ct. p. 1354.

bitrable. Moreover, were the substantive question before me, I would not hold that this provision was intended to modify the arbitration provision.

National Docket No. 4454 may most appropriately be discussed here. It protests the Company's assignment of apprentices to jobs of craft helpers in lieu of recalling laid off craft helpers. The Company's contention that by virtue of a letter amending the Local Supplement the Company "was perfectly within its rights" in acting as it did, goes to the merits of the grievance and cannot be considered by the court. The Supreme Court specifically rejected the Cutler-Hammer doctrine as one that "could only have a crippling effect on grievance arbitration." [29]

### NLRB Jurisdiction

The Company contends that the subject matter of four [30] of the grievances is within the scope of NLRB jurisdiction and that this precludes their resolution by arbitration. National Docket No. 4922, discussed above, protests the Company's removal of employees from their bargaining unit; National Docket No. 4114 protests the Company's refusal to recognize the Union as the bargaining representative for and to apply the contract to employees who were outside the Unit but were working alongside of employees in the Unit and performing what is claimed to be bargaining unit work. National Docket Nos. 4606 through 4611 involve assignment of work claimed by the Maintenance Plumbers Unit to a different Unit represented by a different Union; and National Docket No. 4557, discussed above, protests the Company's crediting an employee with total length of continuous service even though he belonged to a different union during part of it.

The Company's contention poses the question whether an alleged breach of contract which involves conduct that is within the scope of NLRB jurisdiction is arbitrable. The question is a difficult one because an answer either way gives rise to further problems. To hold that such disputes may only be determined by the Board would greatly increase its burden, require it to resolve controversies that may not have any national significance, and probably delay the settlement of the disputes. If, on the other hand, such disputes are held arbitrable the question arises whether the party dissatisfied with the arbitration result is then free to proceed before the Board, and the effect of the arbitrator's decision and the Board's decision if they are contrary. For, if the arbitrator's decision is final only if the losing party wants it to be so, the effectiveness of arbitration will be greatly diminished.

While the decisions are by no means uniform, courts have compelled arbitration in a number of cases where the alleged breach of contract could clearly have also been a basis for an unfair labor charge before the Board. United Steelworkers, etc. v. New Park Mining Co., 273 F.2d 352 (10th Cir., 1959); Lodge No. 12, etc., Int'l Ass'n of Machinists v. Cameron Iron Works, 257 F.2d 467 (5th Cir., 1958); United Elec. & Mach. Workers, etc. v. Worthington Corp., 236 F.2d 364 (1st Cir., 1956); Freight Drivers & Helpers Local Union, etc. v. Quinn Freight Lines, 195 F.Supp. 180 (D.Mass.1961); Retail Shoe & Textile Salesmen's Union, etc. v. Sears, Roebuck, 185 F.Supp. 558 (N.D.Cal.1960). The Supreme Court has not ruled on the question but it has recently cited with approval [31] some of the above cases and Dunau's article, Contractual Prohibition of Unfair Labor Practices: Jurisdictional Problems, 57 Col.L.Rev. 52 (1957), which has as its thesis that Board jurisdiction should not bar arbitration.

29. American Mfg., supra, 363 U.S. pp. 566–567, 80 S.Ct. p. 1346.

30. National Docket No. 4922, Local No. 320, Syracuse, N.Y.; National Docket No. 4114, Local No. 255, Pittsfield, Mass.; National Docket No. 4557, Local No. 201, West Lynn, Mass.; and National Dockets Nos. 4606, 4607, 4608, 4609, 4610, and 4611, Local No. 1081, DeKalb, Ill.

31. See footnote 9 in Local 174, Teamsters v. Lucas Flour Co., supra.

National Docket Nos. 4606 through 4611 present a more vexing problem, because the Union representing the employees who were given the work, allegedly in contravention of the contract, will not be represented in the arbitration proceeding and will not be bound by its result. In the Quinn Freight Lines case, supra, the Court held that absence of the second Union from the arbitration proceeding did not deprive the Union of its contractual right to arbitrate the dispute. In Local 1357, Retail Clerks Intern. Ass'n v. Food Fair Stores (E.D.Pa. 1961), 202 F.Supp. 322, however, the Court denied the Union's motion to compel arbitration of its claim that the contract entitled it to represent employees in a new store. Two important considerations differentiate the latter case from the case at bar. First, enforcement of the Union's claim in the Food Fair case would have, in effect, permitted the Union and the employer to contract to deprive employees of their right to elect a collective bargaining representative. Secondly, in the Food Fair Stores case, as well as in National Labor Relations Board v. Weyerhaeuser Co., 276 F.2d 865 (7th Cir., 1960), and in International Union of Doll & Toy Workers, etc. v. Metal Polishers, etc., Union, 180 F.Supp. 280 (S.D.Cal.1960), cited by the Company, the court was dealing with cases in which NLRB jurisdiction had already been invoked. Here NLRB jurisdiction has not been invoked and cannot be invoked under the present state of the facts. Thus, while arbitration between the Company and the Union may not resolve the underlying dispute, and may therefore not have the salutary effect of assuring industrial peace ascribed to arbitration by the Supreme Court, the alternative of submitting the question to a tribunal which would have jurisdiction over both Unions and would be in a position to resolve the underlying dispute is not available. Under section 10(k) of the Taft-Hartley Act, 29 U.S.C. § 160(k), the Board is empowered to hear and determine jurisdictional disputes only when an unfair labor practice under section 8(b) (4) (D) is charged. Since the Union here has not engaged in the conduct prohibited by section 8(b) (4) (D), the NLRB would not have jurisdiction over its claim. See Local 33, International Hod Carriers, etc., Union v. Mason Tenders District Council, 291 F.2d 496 (2d Cir., 1961). In the absence of an alternative that would assure final resolution of the problem, I see no reason to deny resort to a means of resolving the immediate controversy. Moreover, denial of arbitration would have the paradoxical result of forcing the Union to engage in conduct prohibited by 8(b) (4) (D) as the only means of obtaining adjudication of its claim to this work.

National Docket No. 4557 presents a different problem. The Union does not dispute that the employee who was given the job would be senior to the employee who it claims should have been given the job if the former were credited with total length of continuous service. It contends, however, that in crediting him with time during which he worked in a different Unit, belonging to a different Union, the Company violated Article XI(3). Article XI(3) provides:

"Employees who have been or may be transferred to jobs outside the bargaining unit may be returned to their former classification in the bargaining unit in accordance with total length of continuous service. Employees in any plant who have been certified in a bargaining unit not covered by this Agreement shall have no rights under this Agreement."

The result of this clause is to preserve seniority rights of employees who leave the unit but do not join another union while denying this privilege to employees who do join another union. The Board held a similar provision to be an unfair labor practice and ordered the employer to cease and desist from giving effect to it and to restore the seniority rights of the employees to whom this provision had been applied. Its decision was affirmed by the Court of Appeals, N. L. R. B. v. International Ass'n of Machinists, 279 F.2d 761 (9th Cir., 1960), on the ground

that a natural consequence of that provision would be to discourage employees from seeking new union representation upon transfer to other units. The provision quoted above, on which the Union here relies, would also have the effect of discouraging membership in other unions and must likewise be held to violate the Act. The Union's claim under that provision must therefore be denied. *Ex pacto illicito non oritur actio.*

I am not unmindful of the fact that in holding the provision unlawful and denying arbitration of the grievance based upon it, I am substituting the Court's decision for that of the tribunal bargained for by the parties. I think, however, that it would be incongruous for the court to lend its assistance to a party seeking to enforce an unlawful claim by compelling the other party to arbitrate it.

### Court Procedure

 Lastly, a word concerning the Company's objection to the procedure in this court. This action was brought by a petition to compel arbitration, the appropriate procedure in the New York courts where the action was originally commenced. N.Y.Civil Practice Act § 1450. It is respondent's position, however, that upon removal of the action to this court the petition should have been treated as a complaint, respondent should have been given an opportunity to file an answer, and thereafter petitioner could have made any motion it deemed appropriate.

The action was removed to this court on October 16, 1961. On October 19, 1961, respondent moved to amend the complaint. This motion was argued before Judge Feinberg on November 6, 1961 and was denied on December 11, 1961. The instant motion was noticed for November 14, 1961, but as a result of numerous adjournments, it was first argued on December 12, 1961. Respondent filed a twenty-six page paper, denominated by it as the answer, containing admissions and denials of and affirmative defenses to the allegation in the petition. Both sides have filed voluminous briefs.

In objecting to the procedure followed, respondent does not claim that it would have submitted additional papers or that it was deprived of an opportunity to present a defense which it could have presented under the procedure it suggests. I can see no way in which respondent was prejudiced by the procedure followed. Nor, indeed, does respondent claim prejudice. Its claim is that the procedure was improper and that therefore the motion should be dismissed. Contrary to respondent's contention, it is not clear that the procedure followed was inappropriate, see Engineers Ass'n v. Sperry Gyroscope Co., 251 F.2d 133, 136–137 (2d Cir., 1957); Minkoff v. Scranton Frocks, 172 F.Supp. 870, 877 (S.D.N.Y.1959); see also Kreindler v. Clarise Sportswear Co., 184 F.Supp. 182 (S.D.N.Y.1960); but see Lodge No. 506, International Ass'n of Machinists v. General Electric Co., 211 F.Supp. 654 (N.D.N.Y.1959), and I decline to dismiss the motion on that ground in the absence of a showing that respondent was prejudiced thereby.

Motion to compel arbitration granted except for National Docket No. 4557.

Submit order on notice.