**INTERNATIONAL ASSOCIATION OF MACHINISTS, AFL–CIO, and Its Local Lodge No. 2003, Appellant,**

v.

**HAYES CORPORATION, Appellee.**

Nos. 18946, 18947.

United States Court of Appeals
Fifth Circuit.

Dec. 8, 1961.

Thomas N. Crawford, Jr., Jerome A. Cooper, Plato Papps, Washington, D. C., Cooper, Mitch, Black & Crawford, Birmingham, Ala., for appellant.

J. Asa Rountree, Birmingham, Ala., for appellee.

Before RIVES, CAMERON and BROWN, Circuit Judges.

JOHN R. BROWN, Circuit Judge.

This case [1] presents the two-fold question of whether the grievance involved is arbitrable as determined by the Collective Bargaining Agreement, and whether the Union has sufficiently complied with the procedural requisites of the grievance machinery to obtain a judicial decree compelling arbitration. The District Court answered both in the negative. We disagree and reverse.

The facts in this case are relatively simple and undisputed. Only a brief summary is necessary for an understand-

---

1. The two cases present quite similar facts, the only material difference being that discharges were made during the terms of separate collective bargaining agreements, the provisions of which are identical. The relief prayed for is the same. Therefore, while the opinion discusses the facts of No. 18,946, we likewise reverse and remand No. 18,947.

ing of the legal questions involved. In the trial court both parties sought a summary judgment. The Employer's motion was granted, and that of the Union overruled. This appeal is taken from those rulings.

The Employer, Hayes, was engaged in the maintenance and repair of military aircraft at the United States Military Reservation at Ft. Rucker, Alabama. The contract between the Government and the Employer covering this work provided that the Government could require dismissal of any employee deemed to be incompetent or whose retention would be contrary to the public interest.[2] Pursuant to this contract, the Government required that two employees be discharged because of "carelessness and/or incompetence."[3] The Employer made the discharges effective on November 27, 1959, after giving notice to the employees and the Union on November 25, 1959.

The Collective Bargaining Agreement between the Union and Employer included what is sometimes referred to as a standard form of arbitration clause. The basic provision was that either party could submit to arbitration a grievance involving the "interpretation or application" of the Collective Bargaining Agreement if it had not been settled by Steps 1, 2 or 3.[4] A dispute over a discharge of an employee went automatically to Step 3.[5] The decision in Step 3 was final un-

2. Item VII(d) of this contract provides that "The Contracting Officer [Government] may require the Contractor [Hayes] to dismiss from the work such employee or employees as the Contracting Officer deems incompetent, or whose retention is deemed to be not in the public interest, subject however, to appeal under General Provision 12 for reinstatement of such employees."

3. Each case concerns mechanical proficiency only. No question of security risk was raised.

4. The pertinent provisions of the Collective Bargaining Agreement are as follows:
"Article VII.
"Grievance Procedure.
"Section 1. The term 'Grievance' as used in this Agreement means any dispute arising regarding the interpretation, application, claim of breach or violation of this Agreement which an employee has not been able to adjust with his Foreman with or without his Steward, which shall be at the employee's discretion. Such grievances shall be handled as promptly as possible in accordance with the following procedure:
"Step 1. [Not applicable; pertains to adjustment by shop-foreman.]
"Step 2. [Not applicable; pertains to adjustment by division superintendent.]
"Step 3. If the grievance has not been satisfactorily disposed of under Step 2 hereof, it may be referred by the Grievance Committee to the Director of Industrial Relations or his representative. An agenda of grievances must be submitted by the Union to the Director of Industrial Relations forty-eight (48) hours prior to the scheduled meeting. The Di-

rector of Industrial Relations or his representative shall render a decision in writing within five (5) working days after adjournment of the meeting. A full time representative of the Union shall be permitted to be present and participate in all third step meetings if the Union so desires. The Chairman of the Grievance Committee or his designee shall be spokesman for the Union. The Director of Industrial Relations or his representative will be the spokesman for the Company. There shall be no obligation on the part of the Director of Industrial Relations or the Grievance Committee to discuss any grievance which does not appear on the agenda, except by mutual agreement.
"Section 2. * * * A decision rendered on a grievance in Step 3 of the Grievance Procedure shall be final and binding upon the Company, the Union and the employee or employees involved, and the grievance deemed settled in accordance therewith, unless it is subject to and arbitrated as provided in Article VIII of this Agreement. The time limits in this Article may be extended by written mutual agreement."

5. "Section 10. Should the Company find it necessary to discharge an employee for cause, it shall give twenty-four (24) hours notice to the Union before the discharge becomes effective unless the Company deems it necessary that the employee be immediately removed from the premises. A grievance arising out of a discharge or disciplinary suspension which is felt to have been made without cause, must be filed with the Director of Industrial Relations or his designee, of the

less arbitration was invoked by giving written notice within 20 days.[6]

Contemporaneously with the execution of the basic labor contract, a collateral agreement was entered into between the Union and Employer known as a Memorandum of Agreement. In substance it took cognizance of the Employer's contract with the Government and the likelihood that the Employer might be required by the Government to take action, discharge employees, make changes in the Bargaining Agreement, or the like.[7]

Asserting that the discharges breached the labor contract, the Union promptly submitted grievances to the Employer. The Employer stated then, and still contends, that the discharges were not subject to the grievance procedure as set out in the contract.[8] However, although

no written decision by the Director of Industrial Relations was rendered as contemplated by Article VII of the Collective Bargaining Agreement,[9] the Employer rejected the Union's request for determination by the grievance machinery prescribed.

Suit to compel arbitration was filed by the Union on October 25, 1960. Formal written notice of its desire to arbitrate the grievances was not given until August 29, 1960. This was more than nine months after the Employer had stated its basic position that the grievances were not subject to the grievance procedure.

At the outset it is appropriate to emphasize that the guiding principles for the determination of this case have been authoritatively laid down by the Supreme Court in its recent trilogy of opinions,

Company, within three (3) work days after such discharge or suspension. The Director of Industrial Relations or his designee shall render a written decision within five (5) days after the grievance has been filed with him."

6. "Article VIII.
"Arbitrations.
"Insofar as a grievance shall involve the interpretation or application of the provisions of this Agreement and has not been disposed of satisfactorily in accordance with Step 3 of the Grievance Procedure as set forth in Article VII, it may be submitted to an impartial arbitrator in accordance with the provisions of this article, by either party to this Agreement
"(a) The party desiring such arbitration shall, within twenty (20) days of the decision in Step 3 of said Grievance Procedure, give written notice of such intention to the other party together with a written statement of facts upon which the case is being submitted, including the position of arbitrating party with respect to the issues. * * *"

7. This Memorandum of Agreement provided in part as follows:
"Section I. * * *
"B. Any change in the above, or other changes in the contract between the Company and the United States Government, affecting the bargaining unit will be brought to the attention of the Union.
"C. In the event of a directive from the Army concerning their work needs

that would be in conflict with any provision of this Agreement, the Union and Company are willing to discuss such a problem and will make an effort to resolve the issue in a manner to achieve the needs of the United States Army that will be mutually beneficial, yet will not deprive the employees of their rights of benefits contained in the Collective Bargaining Agreement.
"Section II.
"The Company will notify the Union prior to or immediately following any discharge in compliance with its contract with the Government, which specifically states that the Government may require the removal of any employee, and if permitted by security regulations, the Company will disclose to the Union the reason or basis."

8. As this case was disposed of on the stipulated basis of the pleadings, annexed exhibits and certain affidavits, this excerpt from the Employer's Answer is decisively significant in showing the initial and the continuing present contention of the Employer. The Employer "avers that the matters to which the written grievances relate (i. e., the discharges of employees at the direction of the United States of America) are not and were not subject to the grievance and arbitration provisions of the contract * * * and * * * denies that in such contract, or otherwise, it agreed to submit such matters to arbitration. * * *"

9. See note 4, supra.

United Steelworkers of America v. American Manufacturing Co., 1960, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403; United Steelworkers of America v. Warrior & Gulf Navigation Co., 1960, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409; United Steelworkers of America v. Enterprise Wheel and Car Corp., 1960, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424, and reiterated by this Court in Lodge No. 12, etc. v. Cameron Iron Works, Inc., 5 Cir., 1961, 292 F.2d 112.

In American Manufacturing Co., it was stated that "The courts * * * have no business weighing the merits of the grievance, considering whether there is equity in a particular claim, or determining whether there is particular language in the written instrument which will support the claim. The agreement is to submit all grievances to arbitration, not merely those which the court will deem meritorious. The processing of even frivolous claims may have therapeutic values of which those who are not a part of the plant environment may be quite unaware." [10] In Warrior & Gulf the Court said "Apart from matters that the parties specifically exclude, all of the questions on which the parties disagree must therefore come within the scope of the grievance and arbitration provisions of the collective agreement. The grievance procedure is, in other words, a part of the continuous collective bargaining process." [11] The Court continued "The Congress, however, has by § 301 of the Labor Management Relations Act, assigned the courts the duty of determining whether the reluctant party has breached his promise to arbitrate. For arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit. Yet, to be consistent with congressional policy in favor of settlement of disputes by the parties through the machinery of arbitration, the judicial inquiry under § 301 must be strictly confined to the question whether the reluctant party did agree to arbitrate the grievance or did agree to give the arbitrator power to make the award he made. An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." [11] This Court in Cameron Iron Works phrased it this way. "The merits of the controversy may not be looked to by a court for the purpose of declaring that a correct legal interpretation of the contract would not support the construction sought. This may not be done directly, nor may it be done under the guise of determining that the matter is outside the agreement to arbitrate." [12]

Applying these principles, the answer to the first question seems clear that the grievance is subject to arbitration. When the Union submitted, and the Employer rejected, the grievance that such discharges were contrary to the contracts, there was a dispute as to the "interpretation or application" of the collective agreement. The contract provides that such a dispute may be submitted to the arbitration process.

According to American Manufacturing Co., supra, even a frivolous claim may go through the arbitration process. Courts are not to concern themselves with what an arbitrator *might* do. And yet arbitrability was determined by the trial court in these terms of a possible award by the arbitrator: "An arbitrator might order the company to reinstate an employee whom the Government had excluded from the work and barred from the reservation for security reasons." To compel arbitration in the first instance

---

10. 363 U.S. 564, at 568, 80 S.Ct. 1343, at 1346 (footnotes omitted).

11. These quotations come from 363 U.S. 574, at pp. 581, 582–583, 80 S.Ct. 1347, at pp. 1352–1353.

12. 292 F.2d 112, at 118.

is not to approve *carte blanche* in advance any decision which might be reached. The arbitrator is not a free agent dispensing his own brand of industrial justice. And if the award is arbitrary, capricious or not adequately grounded in the basic collective bargaining contract, it will not be enforced by the courts.[13]

■■ Concededly, arbitration of this grievance was not expressly excluded. Nor, since doubts must be resolved in favor of coverage, and "only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail * * *,"[14] do we find merit in the contention that the Memorandum of Agreement *impliedly* excluded this grievance from the arbitration procedure. On the contrary, we feel that *if* any implications arise from the Memorandum of Agreement, the implication is the other way; i. e., in favor of arbitration. Once we get away from the now impermissible notion that the court is to interpret the substantive provisions of the contract invoked, § IC (note 7, supra) of the Memorandum of Agreement is quite significant. It provides that the parties agree to try to settle problems relating to "work needs" of the army in a mutually beneficial manner without depriving "the employees of their rights or benefits contained in the collective bargaining agreement." This provision was expressly invoked by the Union in the initial written statement of grievance. Likewise, the requirement of notice in § II (note 7, supra) affords a permissible inference that some purpose was to be served by such notice. The Union suggests, for example that the contract (amplified by the Memorandum Agreement) would at least require that the Employer in its relation to military officials act in good faith in taking appropriate and available steps to assure that the pertinent facts were made known concerning the incompetency or security risk of the dischargee and whether appeal, as permitted (see note 2, supra) had been adequately urged.

■ The answer to the second question—compliance with procedural requirements—has likewise been troublesome to the courts, and cases can be found going in both directions. See e. g., International Tel. and Tel. Corp. v. Local 400, etc., 3 Cir., 1960, 286 F.2d 329, and Brass & Copper Workers Federal Labor Union, etc. v. American Brass Co., 7 Cir., 1959, 272 F.2d 849. Our conclusion in this case is that arbitration must be compelled, even though the Union has not complied literally with the procedural requirements.

This is not a case where the Employer has merely refused to arbitrate. Here the Employer has denied the applicability of the entire grievance process. At every step the Employer has contended that the contract amplified by the Memorandum of Agreement has impliedly removed this particular dispute from the grievance process. Since it is plain from this record that a formal written demand for post-Step 3 arbitration would have received the same treatment as the original demands, the Employer ought not to be able to insist on useless, formal, literal compliance, as a condition to the judicial determination of the serious question rightfully urged by the Employer as to whether the dispute was excluded from the grievance procedure.

We have followed this principle in Southwestern Electric Power Co. v. Local Union No. 738, International Brotherhood of Electrical Workers, 5 Cir., 1961,

---

13. "* * * an arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award." 363 U.S. 593, at 597, 80 S.Ct. 1358, at 1361.

14. 363 U.S. 574, at 585, 80 S.Ct. 1347, at 1354.

**244**

293 F.2d 929 [No. 18690, Sept. 1, 1961], in terms applicable to this case. "The record clearly shows an unwillingness on the part of the Company to recognize the Union's claim as a grievance which was covered by the arbitration clauses of the contract. Upon receipt of the letter the Union had justification for a belief that the performance of the conditions precedent would be useless. The repudiation of arbitration as a means of determining the dispute was unequivocal. The Company is estopped to assert now that arbitration cannot be had because the specified conditions precedent had not been performed." 293 F.2d 929, 932. See also Radio Corp. of America v. Association of Professional Engineering Personnel, 3 Cir., 1961, 291 F.2d 105; United Cement, Lime and Gypsum Workers International Union, etc. v. Allentown-Portland Cement Co., E.D.Pa.1958, 163 F.Supp. 816; Insurance Agents International Union v. Prudential Ins. Co., E.D. Pa.1954, 122 F.Supp. 869.

■ The Employer's contention that failure to exact literal compliance with the time requirement exposes it to arbitration at an indefinite time for an unlimited duration hardly bears analysis. At most the time requirement of 20 days was confined to the demand for arbitration. No limit was specified as to the time in which to bring judicial proceedings after a refusal or failure to arbitrate. That is, of course, a matter of laches to be determined on usual equitable principles of delay plus harm. Delgado v. The Malula, 5 Cir., 1961, 291 F.2d 420, 1961 A.M.C. 1706; Vega v. The Malula, 5 Cir., 1961, 291 F.2d 415, 1961 A.M.C. 1698. There was here no showing of any laches, nor did the Court find laches.

We make doubly plain that this opinion in no way indicates what, if any, decision an arbitrator should or must make. We hold merely that he should determine the grievance. Whether the decision or the remedy prescribed is, or is not, supportable is for another day.

Reversed and remanded.