UNITED STEELWORKERS OF AMERICA, AFL–CIO and United Steelworkers of America, AFL–CIO, Local No. 4377, Plaintiffs,

v.

GENERAL ELECTRIC COMPANY, Defendant.

Civ. A. No. 37415.

United States District Court
N. D. Ohio, E. D.

Nov. 20, 1962.

of method of payment applicable to certain employees from a piecework rate to a day rate affecting employees in two job classifications, Tube Roller and Machine Operator in the Tubes and Rods Unit of the Coshocton plant.

The employees filed their grievance on September 9, 1961, which recites the following:

> We are protesting the company's proposed changing of our jobs from piecework to day work. This is nothing more than a wage cut and there is no section in the agreement which permits the company to cut a man's wages. It has never been a practice by the company to change piecework jobs to day work and we do not intend that the company shall start with us.

> Article VIII, Section 3B and C state very clearly how prices may be changed on piecework jobs and these are the only way they can be changed.

> RELIEF SOUGHT. Leave our classifications on piecework as they were set up many years ago.

On September 26, 1961, the company answered the grievance. In substance, the company's response indicated that the action was taken to get quality and costs in line, and was not the subject of any contractual restrictions.

Herschel Kriger, Canton, Ohio, and Jack G. Day, Cleveland, Ohio, for plaintiffs.

Squire, Sanders & Dempsey, Cleveland, Ohio, Thomas J. Quigley and John H. O'Neill, Cleveland, Ohio, of Counsel, for defendant.

GREEN, District Judge.

This matter is before the Court on cross motions for summary judgment filed by both the United Steelworkers of America, AFL-CIO, et al., plaintiffs, and the General Electric Company, defendant. The action was brought by the plaintiff labor organizations against the defendant employer for an order to compel the employer to arbitrate grievances filed by thirteen of the defendant's employees in the plant operated by the defendant at Coshocton, Ohio. This case was filed under § 301 of the Labor Management Relations Act, 29 U.S.C.A. § 185. The grievance alleged by the plaintiffs was the result of defendant's change

On November 6, 1961, after the grievance had been processed through the steps of the grievance procedure as provided in the collective bargaining agreement between the parties, plaintiffs submitted a request for arbitration to the American Arbitration Association. Thereafter, on November 8, 1961, the association submitted a list of arbitrators to the parties, from which plaintiffs made a selection. On November 15, 1961, defendant requested an extension of time to return the list of arbitrators to the American Arbitration Association and obtained an extension to November 24, 1961.

Defendant refused to participate in the arbitration, taking the position that

the grievance plaintiffs sought to arbitrate did not present an arbitrable question under the collective bargaining agreement, since it did not present a question of contract interpretation, and alleging that the agreement expressly excluded from arbitration the very question presented by the grievance.

On November 22, 1961, defendant filed a petition in the Common Pleas Court of Cuyahoga County, Ohio, to enjoin the American Arbitration Association from proceeding to arbitrate the grievance submitted by plaintiffs. On November 24, 1961 that Court issued a temporary restraining order for that purpose. This action was filed thereafter by plaintiffs on December 15, 1961.

The issue before this Court is whether or not the collective bargaining agreement entered into between the parties and dated November 14, 1960, provided that grievances in the nature of the one here concerned should be the subject of arbitration.

■ The question of whether a dispute is arbitrable is a question of law for the Court to determine. United Steelworkers of America v. American Manufacturing Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960).

The guiding principles in this area were established by the Supreme Court in the decisions rendered in United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed. 2d 1409 (1960); United Steelworkers v. American Manufacturing Co., supra; and Textile Workers Union of America v. Lincoln Mills of Alabama, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957).

In United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 80 S. Ct. 1347, Justice Douglas stated:

"The Congress, however, has by § 301 of the Labor Management Relations Act, assigned the courts the duty of determining whether the re-luctant party has breached his promise to arbitrate. * * * "

As to whether or not a grievance is arbitrable depends upon the provisions of the collective bargaining agreement and the courts have been rather liberal in the interpretation of the provisions in favor of arbitration.

In Proctor & Gamble Independent Union v. Proctor & Gamble Mfg. Co., 298 F.2d 644 (Cir. 2, 1962), Judge Medina stated:

"The nub of the matter is that under the broad and comprehensive standard labor arbitration clause every grievance is arbitrable, unless the provisions of the collective bargaining agreement concerning grievances and arbitration contain some clear and unambiguous clause of exclusion, or there is some other term of the agreement that indicates beyond peradventure of doubt that a grievance concerning a particular matter is not intended to be covered by the grievance and arbitration procedure set forth in the agreement."

In the same vein, the Supreme Court in the Warrior & Gulf Navigation Company case, Justice Douglas, stated:

"An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." 363 U.S. 574, 582, 80 S.Ct. 1347, 1353.

"In the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail, particularly where, as here, the exclusion clause is vague and the arbitration clause quite broad." 363 U.S. 574, 585, 80 S.Ct. 1347, 1354.

The pertinent provisions of the collective bargaining agreement governing the

parties to this action are, in part, as follows:

## ARTICLE XXI

### GRIEVANCE PROCEDURE

Section 1. Definition

A grievance shall consist of any dispute between an employee and his foreman or other immediate supervisor arising out of his employment, whether or not involving the interpretation or application of any one or more provisions of this Agreement.

## ARTICLE XXIII

### ARBITRATION

Section 1.

Any grievance which remains unsettled after having been fully processed pursuant to the provisions of Article XXI and which involves either:

(a) the interpretation or application of a provision of this Agreement; * * * shall be submitted to arbitration upon written request of either the Union or the Company, * * *

Section 3.

The arbitrator shall have no authority to add to, detract from, or in any way alter the provisions of this Agreement. In addition to the foregoing limitations upon the authority of an arbitrator, it is specifically agreed that

(a) No arbitrator shall have the authority to establish, modify or eliminate any wage, or piece rate, or job classification, or authority with respect to deciding the appropriate classification of any employee.

## ARTICLE IX

### NO STRIKE CLAUSE

There shall be no strike, sit-down, slow-down, employee demonstration, or any other organized or concerted interference with work of any kind in connection with any matter sub-ject to the grievance procedure, unless and until all of the respective provisions of the successive steps of the grievance procedure set forth in Article XXI shall have been complied with by the Union and the Local, or if the matter is submitted to arbitration as provided in Article XXIII. * * *

Article VIII of the Agreement contained five pages of comprehensive provisions governing Wage Rates and Classifications. A further four-page section detailed the 1960–1963 Wage Agreement.

It is the defendant's position that the matter under consideration is excluded from arbitration by the operation of Article XXIII(3) (a), in that the arbitrator is being called upon to "establish, modify or eliminate" a wage rate.

Defendant characterizes the agreement as representing a "carefully guarded approach" to arbitration. The Court of Appeals for this Circuit, however, has described an arbitration clause covering "any controversy or dispute arising with respect to this contract or the interpretation or a breach thereof" as affording broad coverage. Taft Broadcasting Co. v. Columbus-Dayton Local, 297 F.2d 149 (C.A.6, 1961); also see International Assn. of Machinists v. Hayes Corp., 296 F.2d 238, 240 (C.A.5, 1961).

Defendant also asserts that this agreement does not have a "no-strike clause" of the same scope considered by the Supreme Court in the American and Warrior & Gulf cases, and urges that as a consequence a different rule should be applied. It is true that the "no-strike provision" in this contract is not absolute. On the other hand, when a request for arbitration is made by either the Company or the Union, the Union thereafter is precluded from a strike by the terms of Article IX. While this gives a little more latitude of freedom of action to the Union, it is not sufficient to support an abandonment of the principles of the Steelworkers cases.

Defendant's claim that the grievance of the plaintiffs is excluded from arbi-

tration by virtue of the provision that an arbitrator may not "establish, modify, or eliminate" a wage rate, does not, in the Court's opinion, provide for an express exclusion from arbitration of the subject matter of the grievance as laid down by the rule of the Supreme Court decisions in the Warrior & Gulf Navigation and American Manufacturing Company cases which set forth the guiding principles with reference to grievances which are deemed to be non-arbitrable, providing, that in the absence of any express provision excluding the particular grievance from arbitration only the most forceful evidence of a purpose to exclude a particular grievance from arbitration is necessary.

United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 80 S.Ct. 1347 (1960); International Assn. of Machinists v. International Air Service, Inc., 302 F.2d 808 (C.A. 4, 1962); International Assn. of Machinists v. Hayes Corp., 296 F.2d 238 (C.A.5, 1961); Taft Broadcasting Co., v. Columbus-Dayton Local, 297 F.2d 149 (C.A.6, 1961).

Similar clauses covering a provision that an arbitrator may not "establish, modify, or eliminate" a wage rate have been considered by other courts and deemed not a bar to arbitration of grievances regarding wage disputes. Radio Corporation of America v. Association of Professional Engineering Personnel, 291 F.2d 105 (C.A.3, 1961); Proctor & Gamble Independent Union v. Proctor & Gamble Mfg. Co., D.C., 195 F.Supp. 134 aff'd 298 F.2d 644 (C.A.2, 1962); Carey v. General Electric Co., 213 F.Supp. 276 (D.C.S.D.N.Y.1962).

In touching on this same question the First Circuit Court of Appeals observed:

"We doubt whether the district court should have rested its dismissal upon the provision of § 2 of Art. XV that 'it is specifically agreed that no arbitrator shall have the authority to establish a wage rate or job classification'. The Union may well be correct in saying that this language, properly interpreted, was limited to forbidding the arbitrator to establish new job grades or wage rates, but was not intended to prevent the arbitrator from applying the established job grades and wage rates to existing jobs." Local 149, American Federation of Technical Engineers v. General Electric Co., 250 F.2d 922, 930 (C.A.1, 1957).

■ To accept the viewpoint of the defendant would mean that the employer would have the right to alter existing wage rates without justification or regard to the schedule of rates set forth in the collective bargaining agreement, by using the device of changing piecework rates to hourly rates of pay. Although there is no specific clause in the agreement covering this matter, it appears to the Court that where the terms of the agreement are vague and uncertain, doubts should be resolved in favor of coverage, as stated by Justice Douglas in the Warrior & Gulf Navigation Co., case, supra.

■ The question to be determined in this case is whether or not the employer had the right under the provisions of the bargaining agreement to change an existing piecework wage rate from the established piecework rate prevalent at the time of the signing of the agreement to hourly rates.

It is the Court's opinion that this is not a matter of the *arbitrators* "establishing, modifying, or eliminating" a wage rate, which is specifically excluded by the terms of the agreement. The question is whether or not the change in rates by the *employer* was permissible under the terms of the agreement and the Court is of the opinion that this is subject to arbitration.

Plaintiffs' motion for summary judgment granted. Defendant's motion for summary judgment denied.

This memorandum is adopted as Findings of Fact and Conclusions of Law.