INTERNATIONAL UNION OF ELECTRICAL, RADIO & MACHINE WORKERS OF AMERICA, AFL-CIO

v.

GENERAL ELECTRIC COMPANY.

Civ. No. 9092.

United States District Court
D. Connecticut.

May 15, 1963.

Bertram Diamond, Stamford, Conn., for plaintiff.

Raymond W. Beckwith, Norman K. Parsells, Bridgeport, Conn., David L. Benetar, Nordlinger, Riegelman, Benetar & Charney, New York City, for defendant.

BLUMENFELD, District Judge.

This action is brought by the plaintiff union to compel arbitration under its 1955 Settlement Agreement with the defendant of a dispute provoked by the company's decision to hire the Gellatly Construction Company, of Bridgeport, Connecticut, to relocate the manufacturing facilities of General Electric's Automatic Blanket and Fan Department within the area of its plant at Bridgeport. This project involved the purchase and installation of new equipment and machinery, the moving of machinery, and the remodeling and reconstruction of certain buildings.

The plaintiff is an unincorporated labor organization and the defendant is engaged in an industry affecting commerce. Federal jurisdiction is based on § 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185.

Local 203, a labor organization, affiliated with the plaintiff was a party to the 1955 Settlement Agreement and was certified as the bargaining representative for the unit covering "All production and maintenance employees of the General Electric Company Construction Materials Department and Appliance and Merchandise Department—plant located at Bridgeport, Connecticut."

The original grievance was lodged by Local 203 at Step Two of the grievance procedure on March 19, 1958 in protest against the company's plan to hire outside contractors with employees in a different union to perform the above described work, much of which was normally performed by employees within the union's bargaining unit. After the grievance had been pursued through Step Three, the final stage of the grievance procedure preliminary to arbitra-

tion, and the work had begun with Gellatly using its employees, about 140 maintenance employees who were members of the Local went out on strike. The vote to strike was taken on the night of April 28th, and the strike was begun on April 29, 1958. It ended May 14, 1958 following an N.L.R.B. investigation of the strike pursuant to a company complaint of an unfair labor practice and petition for an injunction instituted in the District Court by the Regional Director. During the strike, the International Union had made written demand upon the company for arbitration pursuant to Article XV of the General Electric-International Union National Agreement, and requested the American Arbitration Association to arrange for it. After the defendant had advised the Association of its position that the " * * * grievance desired to be arbitrated does not, in its opinion, raise an arbitrable issue * * * ",[1] thus forestalling action by the Association through the effect of Article XV 2(b) of the Agreement, this litigation was begun. The union brought suit in the Superior Court for Fairfield County, Connecticut, on June 30, 1958, to compel the company to arbitrate. Following a decision of the Supreme Court of Connecticut, International Union of Electrical, Radio & Machine Workers, A.F.L.–C.I.O. v. General Electric Co., 148 Conn. 693, 174 A.2d 298 (1961), reversing and remanding the case to the Superior Court which had held that the union's amended application (complaint) failed to state a cause of action, the defendant removed the matter to this court, where the plaintiff's motion to remand was denied by Judge Timbers.

Since this is a case in which original jurisdiction could have been founded in this court, the parties have agreed that no appeal will be taken upon the ground of any jurisdictional defect based upon the removal. Also, sufficient facts have been agreed upon between the parties by stipulation and at pre-trial confer-

ences to permit disposition of the case on their cross motions for summary judgment.

The employer defends on three grounds:

(1) That contracting out does not constitute an arbitrable dispute under the collective bargaining agreement.

(2) That the merits have already been decided adversely to the union by the N.L.R.B.

(3) That, having elected to strike, the union is now estopped from seeking arbitration.

### Arbitrability

Article XV of the Agreement provides that:

"Any grievance which remains unsettled after having been fully processed pursuant to the provisions of Article XIII, [Grievance Procedure] and which involves either, (a) the interpretation or application of a provision of this Agreement, * * shall be submitted to arbitration. * * * "

In several cases recently decided by the Supreme Court and our own Court of Appeals, the special rules for the interpretation of arbitration provisions in collective bargaining agreements have been clearly defined. Since this is not the first case in which the scope of the arbitration provisions in the 1955 Agreement has been considered, the task of applying these rules to this case has been substantially lightened. The case of Carey v. General Electric Co., 213 F.Supp. 276 (S.D.N.Y.1962) aff'd as to questions material here, 2 Cir., 315 F.2d 499, determined the scope of the very same provisions in the contract which are at issue here. Reference to Judge Palmieri's excellent and thorough analysis of the applicable Supreme Court cases, Textile Workers Union of America v. Lincoln Mills of Alabama, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957);

---

1. The defendant's position is that because a dispute is "grievable" it does not necessarily follow that it is arbitrable.

United Steelworkers of America v. American Manufacturing Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 575, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); and United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960), followed by Judge Kaufman's penetrating review and scholarly exposition of the rationale of the cases in this area of law, serve to eliminate all doubt as to whether the subject matter of this dispute is arbitrable.

One of the grievances in Carey, supra, (labeled National Docket Nos. 4606–4611 consolidated as a single grievance), involved assignment of work normally performed by maintenance plumbers, employees within the union's bargaining unit, to employees in a different unit represented by a different union. This grievance was held to be arbitrable despite the defendant's contention that it was not within the arbitration clause. Whether described as "assignment of work to a different union" or as "contracting out", discernment yields no basis for distinguishing the nature of the grievance in these two cases. Carey v. General Electric Co., supra, 213 F.Supp. pp. 292–293. Square support for a determination that a contracting out dispute is arbitrable is also found in the first of the now famous steelworkers trilogy, United Steelworkers of America v. Warrior & Gulf Nav. Co., supra, 363 U.S. p. 585, 80 S.Ct. p. 1354, where the Supreme Court held:

"The grievance alleged that the contracting out was a violation of the collective bargaining agreement. There was, therefore, a dispute 'as to the *meaning* and *application* of the provisions of this Agreement' which the parties had agreed would be determined by arbitration.

"The judiciary sits in these cases to bring into operation an arbitral process which substitutes a regime of peaceful settlement for the older regime of industrial conflict.

Whether contracting out in the present case violated the agreement is the question. It is a question for the arbiter, not for the courts." (Emphasis added)

Although the attempt to distinguish "meaning and application of the provisions", in Warrior, from "interpretation or application of any provision", in this Agreement, could be brushed aside on its face, it may be said to have been accorded the courtesy of a judicial rejection by Proctor & Gamble Ind. Union of Port Ivory, N. Y. v. Proctor & Gamble Mfg. Co., 298 F.2d 644 (2 Cir.1962), where Judge Bartels' order (195 F.Supp. 134, E.D.N.Y.1961) to compel arbitration of a grievance described as " * * * [c]ontracting out work normally performed by the Union's bargaining unit * * * " was upheld on the basis of an arbitration clause worded like the one here. Following the teaching of Warrior, the opinion of the Court of Appeals by Judge Medina pointed out in Proctor & Gamble Ind. Union of Port Ivory, N. Y. v. Proctor & Gamble Mfg. Co., supra, 298 F.2d pp. 645–646:

"The nub of the matter is that under the broad and comprehensive standard labor arbitration clause every grievance is arbitrable, unless the provisions of the collective bargaining agreement concerning grievances and arbitration contain some clear and unambiguous clause of exclusion, or there is some other term of the agreement that indicates beyond peradventure of doubt that a grievance concerning a particular matter is not intended to be covered by the grievance and arbitration procedure set out in the agreement."

There is no doubt that the arbitration provisions of Article XV are broad enough to apply to the plaintiff's grievance in this case.

### Bargaining History

Apparently, on the theory that in Carey the Court did not have the bargaining history before it in interpreting the arbitration provision in the 1955 Agreement,

the company now stresses the argument that the so-called "wrap up" clause (Article XXVII, Issues of General Application), if interpreted in the light of the collective bargaining history, which it claims would reveal a succession of unsuccessful attempts by the union to secure a prohibition on the company's right to farm out work, removes this dispute from the jurisdiction of the arbiter. The clause pointed to provides:

"This Agreement * * * between the parties [is] intended to be and shall be in full settlement of all issues which were the subject of collective bargaining between the parties in national level collective bargaining negotiations in 1955. Consequently, it is agreed that none of such issues shall be subject to collective bargaining during the term of this Agreement and there shall be no strike or lockout in connection with any such issue or issues; * *."

Bargaining history of much the same character was before the Supreme Court in Warrior, as is made clear by Justice Whittaker's dissent, 363 U.S. p. 588, 80 S.Ct. p. 1356, yet the opinion of the Court gave it no significance. Association of Westinghouse Salaried Employees v. Westinghouse Electric Corp., 283 F. 2d 93 (3 Cir.1960); International Ass'n of Machinists, Lodge 1652 v. International Aircraft Services, Inc., 302 F.2d 808 (4 Cir.1962). The bargaining history in Warrior was directed to a management's prerogatives clause which the employer claimed removed certain "matters which are strictly a function of management" from the jurisdiction of the arbitrator, rather than to a "wrap up" clause such as is present here, which, on its face, purports only to foreclose issues which "were the subject of collective bargaining between the parties" from being reconsidered by *"collective bargaining* during the term of this Agreement", (emphasis added), and not to restrict the *arbitrator's* jurisdiction as in Warrior. Where the prior collective bargaining history deals with the merits of the dispute rather than its arbitrability, see Pacific

Northwest Bell Tel. Co. v. Communications Workers of America, 310 F.2d 244 (9 Cir.1962); United Electrical, Radio & Machine Workers of America (UE) v. General Electric Co., 208 F.Supp. 870 (S.D.N.Y.1962), "[t]his [company's] argument is a perfectly permissible one to make but it certainly, by the directions which the Supreme Court has given, is one with which the arbitrator must labor and not the judge." Association of Westinghouse Salaried Employees v. Westinghouse Electric Co., supra, 283 F.2d p. 95; International Ass'n of Machinists, Lodge 1652 v. International Aircraft Services, Inc., supra; United Steelworkers of America v. General Electric Co., 211 F.Supp. 562 (N.D.Ohio E.D. 1962); but see Local No. 725 International Union of Operating Engineers v. Standard Oil, 186 F.Supp. 895 (D.N.D. 1960); Local 12298 U. M. W. v. Bridgeport Gas, 222 F.Supp. 297 (D.Conn. 1963) decision of Judge Timbers.

### Effect of Proceedings Before N.L.R.B.

■ The grievance protesting against the company's assignment of work, which was claimed by the Local to be work normally done by construction and maintenance employees within the bargaining unit it comprised, to outside contractors having been processed through Step Two without satisfactory settlement, was referred by Local 203 to the plaintiff International Union for Step Three discussions at the headquarters level in New York City, in accordance with Article XIII 2(c) of the Agreement. The Step Three grievance meeting was held on April 28, 1958. That evening, the Local voted to strike. When about 140 maintenance employees, 65 of whom were then either out of work or downgraded, began to strike and picket the Bridgeport Works and on the next day, the defendant reacted by filing charges with the N.L. R.B. against the Local and International which accused them of violating §§ 8(b) (4) (A) and (D) of the National Labor Relations Act, 29 U.S.C. § 158. Thereafter, the Regional Director's action for

an injunction against the strikers was settled upon a written stipulation for entry of a cease and desist order by the Board and to a consent decree to enforce it. The stipulation provides:

"8. This Stipulation contains the entire agreement between the parties, there being no agreement of any kind, verbal, or otherwise, which varies, alters, or adds to it. The execution and signing of this Stipulation by the Respondents does not constitute an admission that the Respondents have violated . any provision of the Act, nor does it constitute a waiver by the Respondents of their claims that the employees represented by Respondent labor organization were entitled to perform the disputed work described in the Notice of Charge Filed and Notice of Hearing pursuant to Section 10(k) and in the consolidated Complaint, and that the Company's assignment of such disputed work constituted a breach of the existing collective bargaining agreement heretofore made by and between the International Union of Electrical, Radio and Machine Workers, AFL–CIO and the Company."

The defendant was neither a party to the injunction proceedings instituted in the District Court nor to the decree of the Court of Appeals enforcing the Board's cease and desist order; nor was it a party to the settlement stipulation.

Having thus retraced the steps leading to the order of the Board and the judgment enforcing it found in documents themselves to ascertain what was actually decided by the Board, The Evergreens v. Nunan, 141 F.2d 927, 152 A.L.R. 1187 (2 Cir.1944) cert. denied 323 U.S. 720, 65 S.Ct. 49, 89 L.Ed. 579 (1944), it is abundantly clear that the question whether, under the terms of the collective agreement, the plaintiff was entitled to the work was never fought out nor decided. On the contrary, both of the actual parties to the proceeding and to its settlement, well aware of the fact that the question of contracting out might be of some importance in future litigation, took the appropriate safeguard of specifically excluding it from those issues which were settled. Whether or not a Board determination in 8(b) (4) (D) cases of the union's contractual right to the work for which it struck to the extent that it may be required by N. L. R. B. v. Radio & Television Broadcast Engineers Union, 364 U.S. 573, 81 S.Ct. 330, 5 L.Ed. 2d 302 (1961), would operate as a bar to arbitration of the union's claim to the work under its collective bargaining contract, see Carey v. General Electric Co., supra, clearly there can be no such bar where the Board stopped far short of making any such determination with respect to the subject matter of the dispute which the union seeks to arbitrate.[2]

"A judgment on one cause of action is not conclusive in a subsequent action on a different cause of action as to questions of law not litigated in the first action. This is true even though both actions involve the same subject matter." Restatement, Judgment (1942) 70, Comment c.; see United States v. Moser, 266 U.S. 236, 244, 45 S.Ct. 66, 69 L.Ed. 262 (1924). Here, the point of the merit of the union's claim to the work under the contract was not presented, not litigated, and not determined in the injunction proceeding or elsewhere.

2. The parties properly agree that the jurisdiction of this court is unaffected by the existence of N.L.R.B. jurisdiction over the alleged unfair labor practices committed by the Local. Neither primary nor priority of jurisdiction is here relevant, since the Board has already acted to the extent it deemed necessary. Neither the company nor the union contends that the Board's jurisdiction over the claims of §§ 8(b) (4) (A) and (D) unfair labor practices operates to preempt this court from exercising its § 301 jurisdiction, Carey v. General Electric Co., supra; but see Carey v. Westinghouse Electric Corp., 11 N.Y.2d 452, 230 N.Y.S.2d 703, 184 N.E.2d 298 (1962) cert. granted 372 U.S. 957, 83 S.Ct. 1012, 10 L.Ed.2d 10 and the present rule in this circuit is clearly that the court is not, thereby, deprived of its jurisdiction.

"Estoppel by judgment includes matters in a second proceeding which were actually presented and determined in an earlier suit. See Commissioner v. Sunnen, supra, [333 U.S.] at 598, 68 S.Ct. at [333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898 (1949)]. A judgment entered with the consent of the parties may involve a determination of questions of fact and law by the court. But unless a showing is made that that was the case, the judgment has no greater dignity, so far as collateral estoppel is concerned, than any judgment entered only as a compromise of the parties." United States v. International Building Co., 345 U.S. 502 73 S.Ct. 807, 97 L.Ed. 1182 (1953).

The recent decision of the Supreme Court in National Labor Relations Board v. Ochoa Fertilizer Corp., 368 U.S. 318, 82 S.Ct. 344, 7 L.Ed.2d 312 (1961), does not compel a different result. That decision merely requires the Court of Appeals to enforce consent decrees as drawn, regardless of whether the Board heard any evidence or had anything before it other than the stipulation. This order of the Board, and that of the Court enforcing it, merely requires the union to cease and desist from striking or picketing "where an object thereof is to force or require the General Electric Company to assign any work to employees who are members of or are represented by the respondent labor organization rather than to employees who are members of or are represented by any other labor organization." In so enjoining the union pursuant to a stipulation which expressly reserved the latter's right to pursue its claims under the contract, the Board did not tread upon the terrain here reserved for the arbitrator. The decree cannot be stretched to include what was expressly excluded by the stipulation.

## The No-Strike Clause

Finally, there remains for consideration the significance to be attached to the strike. The defendant has made use of the fact of the strike by members of Local 203 as the base for a miscellany of contentions:

(1) A contract breach upon which the right to arbitrate was conditioned;

(2) A waiver or repudiation of its right to arbitration; and

(3) An election of remedies.

Every one of these would, if valid, preclude determination by arbitration of the contracting out dispute on the merits.

■ (1) Although not expressly passed upon there, the decision in Carey should be sufficient to dispose of the company's contention that the relatively restricted no-strike clause in this contract somehow renders this dispute nonarbitrable. See also United Steelworkers of America v. General Electric Co., 211 F.Supp. 562 (N.D.Ohio E.D.1962). The Supreme Court has recently had occasion to comment on the relation between the no-strike and arbitration clauses in a collective bargaining contract. Speaking through Justice White, Drake Bakeries, Inc. v. Local 50, American Bakery and Confectionary Workers, 370 U.S. 254, 261, no. 7, 82 S.Ct. 1346, 1351, 8 L.Ed. 2d 474 (1962), it said:

"We do not understand the opinions in Textile Workers Union of America v. Lincoln Mills, 353 U.S. 448, 455, [77 S.Ct. 912, 1 L.Ed.]2d 972, or United Steelworkers of America v. American Mfg. Co., 363 U.S. 564, 567, 80 S.Ct. 1343, 4 L.Ed. 2d 1403, to enunciate a flat and general rule that these two clauses are properly to be regarded as exact counterweights in every industrial setting, or to justify either party to the contract in wrenching them from their context in the collective agreement on the ground that they are mutually dependent covenants which are servable from the other promises between the parties."

There is "no such inflexible rule rigidly linking no-strike and arbitration clauses of every collective bargaining contract in every situation." Drake, supra, 370 U.S. p. 261, 82 S.Ct. p. 1351.

The agreement between the parties provides in Article XIV only that:

"There shall be no strike * * * in connection with any matter subject to the grievance procedure, * * * unless and until all of the respective provisions of the successive steps of the grievance procedure * * * shall have been complied with * * * or if the matter is submitted to arbitration. * * * "

An examination of the arbitration clause, however, discloses nothing in its language which in any way conditions arbitration upon the absence of a strike. The only matters excluded from arbitration are particularly specified in Article XV 3(b):

"It is specifically agreed that no arbitrator shall have the authority to establish or modify any wage, salary or piece rate, or job classification, or authority to decide the appropriate classification of any employee. Subject to the foregoing limitations on the authority of an arbitrator, nothing in this subsection (b) shall prevent arbitration of a grievance involving a violation of this Agreement."

This wording in the Agreement reveals, as clearly as that in the collective bargaining agreement before the Court in Drake, 370 U.S. p. 262, 82 S.Ct. p. 1351, that "by agreeing to arbitrate all claims without excluding the case where the union struck over an arbitrable matter, the parties have negatived any intention to condition the duty to arbitrate upon the absence of strikes." And, in this case, no less than in Drake, "They have thus cut the ground from under the argument that an alleged strike, automatically and regardless of the circumstances, is such a breach or repudiation of the arbitration clause by the union that the company is excused from arbitrating, upon theories of waiver, estoppel, or

otherwise." 370 U.S. p. 262, 82 S.Ct. p. 1351. In this case, the strike was not a breach of a condition upon the right to arbitration of the dispute.

(2) While the parties agreed that the Step Three discussion of the grievance procedure had been held on April 28, 1958 before the vote to strike was taken, they were unwilling to agree that the company, at the time of that discussion, authoritatively expressed its decision to deny the grievance. However, on April 29, 1958, the day the strike commenced, the respondent did deny the petitioner's grievance in writing. This completed the grievance process. The dispute had not yet been submitted to arbitration.

In Drake, the union's contention that its own breach of the contract by a strike should not operate to deprive it of the right to arbitration of that self-same breach was upheld. Although this case arises differently, the company takes the same position regarding the effect of the strike upon its obligation to arbitrate. The Supreme Court in Drake, 370 U.S. p. 261, 82 S.Ct. p. 1350, rejected the employer's argument that:

" * * * the union's violation of the no-strike clause is *sui generis* and so basic to what the employer bargained for in the contract and so inherently and 'fundamentally inconsistent with' the grievance and arbitration procedures that the faithful observance of the no-strike clause by the union is a condition precedent to the employer's duty to arbitrate (even though he has promised to do so), or that the union must be deemed to have waived, or to be estopped from asserting, its right to arbitrate." •

Although damages are not sought here,[3] the evidence bearing on the alleged strike need not be ignored in considering whether the strike, in addition to, or in lieu of a claim for damages, should also

---

3. There is an ample remedy available to the company in case it should decide to press its claim for alleged breach of the no-strike clause by the Local. Drake Bakeries, Inc. v. Local 50, Bakery and

Confectionary Workers, supra; Local 174, Teamsters, Chauffeurs, Warehousemen and Helpers of America v. Lucas Flour Co., 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed. 2d 593 (1961).

have the effect of barring the right to arbitration provided in the contract. To the extent that the strike is asserted to constitute a repudiation of the contract, its nature should be taken into consideration. See Drake Bakeries, Inc. v. Local 50, American Bakery and Confectionary Workers, supra, 370 U.S. pp. 262–263, no. 9, 82 S.Ct. pp. 1351–1352. The circumstances in this case make it at least debatable that the strike was a breach of the contract by the union, but even if this was a breach, or whether the strike be labeled as waiver or repudiation, it was insufficient to excuse the company from its contractual obligation to arbitrate. See Armstrong-Norwalk Rubber Corp. v. Local No. 283, 167 F. Supp. 817 (D.Conn.1958) app. dismissed 2 Cir., 269 F.2d 618.

(3) It is even less permissible to regard the strike as a choice of remedy. With rare perspicacity, Judge Palmieri foresaw what was bound to happen if arbitration was denied. He warned in Carey, 213 F.Supp. p. 293, "Moreover, denial of arbitration would have the paradoxical result of forcing the Union to engage in conduct prohibited by 8(b) (4) (D) as the only means of obtaining adjudication of its claim to this work." See also Carey, 315 F.2d 499 (2 Cir. 1963). It would indeed be a strange kind of remedy, the invocation of which would entail as a consequence the prosecution of persons pursuing it.

Since the strike was not an appropriate method of obtaining relief, it could not act as a bar, e. g. Samasko v. Davis, 135 Conn. 377, 64 A.2d 682 (1949); Cf. Restatements, Judgments, § 65, Comment i, 1942, with Restatements, Contracts, § 383, 1932. Sight should not be lost of the fact that it was the *company*, not the union, that brought the matter before the N.L.R.B. The efforts of the company to force the petitioner to submit its claim to a tribunal chosen by the defendant can hardly be regarded as a choice made by the petitioner or as a basis for a claim by

the defendant that it relied upon the petitioner's choice of the N.L.R.B. as the forum to decide disputes which they had contracted should be decided by arbitrators. Even if the Local's strike should be construed as pursuit of a remedy, it was one that must necessarily have been unavailing. That would not prevent resort later to an appropriate remedy. Henry v. Herrington, 193 N. Y. 218, 86 N.E. 29, 20 L.R.A.,N.S., 249 (1908). This was not a case of election between inconsistent rights. Election between substantive rights, e. g. to ratify or disavow a contract made by an agent without authority, is to be distinguished from election between judicial remedies. 3 Williston on Contracts, § 683, rev'd 1936.

The petitioner is not barred from seeking an order in this court to compel the union to submit the grievance to arbitrators.

The substantive federal law of collective bargaining agreements which the Lincoln Mills decision, 353 U.S. 456, 457, 77 S.Ct. 917, 918, required the judiciary to develop from the provisions and policies of the National Labor Relations Act, general legal principles and other appropriate sources has already reached the stage where it is unnecessary to restate the reasons of policy which underlie the special rules of interpretation to be used in determining the scope of an arbitration clause in such agreements. Those reasons of policy apply with no less force to the determination of the effect of the kind of special defenses to the enforcement of such an arbitration clause which were interposed here in an attempt to prevent the submission of this dispute to arbitrators.

Defendant's motion for summary judgment is denied.

Plaintiff's motion for summary judgment is granted.

Defendant company must submit aforesaid grievance to arbitration.

So ordered.