**LODGE NO. 912, Affiliated with District No. 34, of the International Association of Machinists, AFL–CIO, Cincinnati 25, Ohio, Plaintiff,**

v.

**GENERAL ELECTRIC COMPANY, a Corporation, Evendale, Ohio, Defendant.**

**Civ. A. No. 5161.**

United States District Court
S. D. Ohio, W. D.
June 5, 1964.

Robert I. Doggett and Smith & Latimer, Cincinnati, Ohio, for plaintiff.

J. Mack Swigert and Wilbur L. Collins, Cincinnati, Ohio, for defendant.

JOHN W. PECK, District Judge.

This action has been instituted under Section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185, by the plaintiff labor union which represents various employees of the defendant corporation. It seeks to compel the defendant to arbitrate Grievance No. 3-RPI-1563-IV filed in October, 1960, by an employee (Pangborn) during the term of a collective bargaining agreement executed between the parties in 1960 and which expired in 1963.

The parties agree that the question as to the arbitrability of this dispute is a question of law for the Court to determine. United Steelworkers of America v. American Manufacturing Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960). Arbitrability is voluntary and hence the Court must be guided by the provisions of the agreement to determine whether or not the defendant contractually bound itself to refer the subject grievance to arbitration.

The grievance was fully processed pursuant to the provisions of Article XXI of the 1960 agreement and the plaintiff contends that the defendant bound itself to arbitrate it under the provisions of Article XXII, paragraph 1, which states in part:

"*Any grievance* which involves the interpretation or application of this Agreement, and any grievance protesting the discharge of an employee and which remains unsettled after having been fully processed pursuant to the provisions of Article XXI *shall be submitted to arbitration* upon request of either the Union or the Company, * * *" (Emphasis supplied.)

The plaintiff contends that the italic phrases clearly indicate that the instant grievance "shall be submitted to arbitration" and hence that an order should issue requiring the defendant to comply with the contract. Although the defendant had originally taken the position that the instant grievance is not arbitrable since it does not involve "the interpretation or application of this Agreement," this position has now been abandoned and the defendant agrees that the nature of the grievance renders it arbitrable. (Pretrial Order, January 14, 1964).

The defendant's refusal to submit the subject grievance to arbitration rests on two primary grounds:

██ 1. The defendant urges that it was never under a duty to arbitrate any grievance, including the one which is the subject of this action, under the 1960-63 contract which was then in effect. Defendant cites Article XXIII, paragraph 2 of the 1960 agreement as authority for this position which states in part:

"In the event that a grievance which has been processed through all of the respective steps of the grievance procedure as set forth in Article XXI remains unsettled, and the Company thereafter refuses to arbitrate the grievance, * * * the Union may call a strike of all of the employees whom they represent, but not a sit-down, slow-down, * * *"

The defendant maintains that this article reserves to the company the right to refuse to submit any grievance to arbitration and, following that, the exclusive remedy of the union is a strike or, stated another way, the refusal of the company relieves the union of the limitation con-

tained in the no-strike clause. However, this limited no-strike defense here presented has, in our view, been sufficiently answered adversely to the defendant by a number of recent decisions with varying degrees of persuasiveness, United Steelworkers of America v. General Electric Co., 211 F.Supp. 562 (N.D.Ohio 1962), aff'd 327 F.2d 853 (6th Cir. Feb. 19, 1964); International Union of Electrical, Radio and Machine Workers v. Westinghouse Electric Corp., 218 F.Supp. 82 (S.D.N.Y.1963), aff'd 326 F.2d 758 (2d Cir. 1964); Carey v. General Electric Co., 315 F.2d 499 (2d Cir. 1963); International Union of Electrical, Radio & Machine Workers v. General Electric Co., 221 F.Supp. 6 (D.C.Conn.1963); Contra, Westinghouse Salaried Employees Ass'n v. Westinghouse Electric Corp., 217 F. Supp. 622 (W.D.Pa.1963).

2. The second defense urged is that while the instant case was pending before this Court, the parties on October 3, 1963, entered into a new collective bargaining agreement which superseded the 1960–63 agreement and rendered the present controversy moot.

▇ In support of its position that the parties have by subsequent agreement resolved the issue originally presented, the defendant refers the Court to the language of the new Article XXII of the 1963 agreement which is much different from its counterpart in the 1960 agreement. This new agreement spells out in detail certain grievances which may be submitted to arbitration and then states:

> "Any grievance which remains unsettled after having been fully processed pursuant to the provisions of Article XXI shall, *notwithstanding the Company's right to refuse to arbitrate grievances*, as reserved in Article XXIII, para. (2), be submitted to arbitration upon written request, * * *" (Emphasis supplied.)

This clause did not exist in the 1960–63 contract which was in existence at the time the subject grievance arose. What effect such a clause may have during the existence of the new contract is not presently before the Court. While the clause may or may not constitute evidence as to the company's view of its right under the prior contract, it does not establish any mutual intent of both parties to resolve this then pending grievance. Had the parties desired to resolve this action and other grievances pending at the time of the 1963 agreement (affidavit of A. Tucker, p. 2), they could have done so specifically.

▇ Finally, there is the possibility of the existence of an ambiguity in the language which has been employed by the parties. Article XXII, paragraph 1 of the 1960 agreement contains this mandatory clause: "Any grievance * * shall be submitted to arbitration * * *" This language is clear, and if any ambiguity has been created it results from the subsequent article and a clause in a contract executed three years later. Considered in the light most favorable to the defendant and assuming without finding that an ambiguity exists, we are confronted with a situation subject to resolution under the policy which requires that ambiguities be determined in favor of industrial arbitration: "Doubts should be resolved in favor of coverage." United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 583, 80 S.Ct. 1347, 1353, 4 L.Ed. 2d 1409 (1960). Procter & Gamble Independent Union of Port Ivory, N. Y. v. Procter & Gamble Manufacturing Company, 298 F.2d 644 (2d Cir. 1962).

In accordance with the foregoing, and in view of the agreement of counsel that the case is in proper posture for disposition under Rule 56, Federal Rules of Civil Procedure,

It is ordered that the motion of the plaintiff for summary judgment should be and it is hereby granted and that the motion of defendant for summary judgment should be and it is hereby denied, with notation of defendant's exceptions.